In the Matter of the ADOPTION of Timothy O'Brien GARDINER, a minor.

Chester CRAWLEY and Lavona Crawley, Appellants,

v.

Dale GARDINER and Kathleen Gardiner, Appellees.

No. 2–63109.

Supreme Court of Iowa.

Jan. 23, 1980.

Donald R. Ferree, Panora, for appellants.

Robert Y. Taylor, of Taylor, Taylor & Feilmeyer, Guthrie Center, for appellees.

Considered by LeGRAND, P. J., and REES, UHLENHOPP, ALLBEE, and LARSON, JJ.

UHLENHOPP, Justice.

This appeal involves the question of the jurisdiction of an adoption court to grant visitation privileges to the natural grandparents of the child. Chester and Lavona Crawley, maternal grandparents, appeal from a decree modifying a clause in an adoption decree allowing them to visit their grandchild Timothy O'Brien Gardiner. The adoption decree named Dale and Kathleen Gardiner as Timothy's adoptive parents. The Crawleys assert that the trial court committed a number of errors in the modification proceeding. With permission, the parties filed supplemental briefs on the question of the jurisdiction of an adoption court to grant grandparental visitation. We do not reach the alleged errors the

Crawleys originally assigned, since we find the appeal turns on the power of an adoption court to grant visitation. Although the adoption decree in question purports to grant visitation rights to additional relatives, this appeal actually involves only the Crawleys' visitation.

Timothy was born to Larry Dean and Peggy Sue Gardiner on May 8, 1975. Peggy Sue died on February 19, 1976. The Guthrie County District Court terminated Larry's parental rights on September 12, 1977, and placed Timothy in the custody of the Iowa Department of Social Services.

The Crawleys are Peggy Sue's parents. They apparently had the actual care of Timothy for approximately three weeks following Peggy Sue's death. On March 9, 1976, Timothy was placed in the home of Dale and Kathleen Gardiner; Dale is Larry Dean's brother. On August 16, 1978, on recommendation of the Iowa Department of Social Services, the district court entered an adoption decree naming Dale and Kathleen as Timothy's parents.

The adoption decree granted specific visitation rights to the Crawleys. The visitation clause reads thus:

Monthly visitation commencing with the fourth weekend of each month beginning with the month of June, 1978, from Saturday morning at 10:00 A.M. to Sunday evening at 6:00 P.M. and out of the adoptive parents home with the visiting parties to give reasonable notice of at least 24 hours prior to said monthly visitation if they will be unable to exercise the same; a summer visitation consisting of two weeks and sometime between the months of June through August of each year, commencing with the summer of 1978 with the visiting parties to give fourteen (14) days advance notice of the time they will commence the exercise of said visitation right, a Christmas visitation period with said child of at least three (3) days, commencing with Christmas Day during the said period and to alternate Christmas Day thereafter with the adoptive parents and with the visiting parties to give at least fourteen (14) days

advance notice of the specific time they will exercise said Christmas visitation.

. . .

The adoption court based its authority to permit visitation on "the power . . . granted under Chapter 600, Chapter 633, Chapter 598 of the Code of Iowa (1977), and pursuant to the inherent powers held by this Court sitting as a Court of equity to establish and determine the best interests of all parties concerned, including Timothy O'Brien Gardiner."

On December 13, 1978, Dale and Kathleen petitioned the district court for modification of the visitation rights in the adoption decree. The court granted the modification, and the Crawleys appealed.

We are not dealing with consensual visitation where, by agreement of all concerned, natural grandparents visit a child adopted by others. We deal here with a purported legally enforceable *right* of visitation by grandparents.

I. We can find no authorization in chapter 600 for the visitation clause in the adoption decree. Adoption was unknown at common law; it is statutory. *In re Fitzgerald's Estate*, 223 Iowa 141, 145, 272 N.W. 117, 119 (1937). Chapter 600 authorizes adoption in this state and makes no reference to visitation rights of any kind. Although section 600.1 states that the "welfare of the person to be adopted shall be the paramount consideration in interpreting this division," it goes on to provide that "the interests of the adopting parents shall be given due consideration in this interpretation." Without more specific legislative authorization, we are unable to find that chapter 600 empowers Iowa courts to grant grandparental visitation in adoption decrees. This is especially true in view of section 600.13(4) which expressly terminates the rights of natural parents upon an adoption.

II. Neither do we find any authorization in chapter 633 of the Code for the visitation clause in the adoption decree. That chapter contains our probate code. The provision of the chapter which refers

specifically to the effect of adoption is section 633.223. The section states essentially that an adopted person inherits from the adoptive parents and the adoptive parents inherit from the adopted person, the same as if the adopted person were a natural born child. We find no intimation in this provision, or in any of the others in the chapter, that natural parents or their parents may be granted visitation privileges in an adoption proceeding.

III. One section in chapter 598 of the Code provides a stronger basis for the visitation clause in the adoption decree. Section 598.35 expressly authorizes the award of grandparental visitation in several situations:

> The grandparents of a child may petition the district court for grandchild visitation rights when:
> 1. The parents of the child are divorced, or
> 2. A petition for dissolution of marriage has been filed by one of the parents of the child, or
> 3. The parent of the child, who is the child of the grandparents, has died, or
> 4. The child has been placed in a foster home.
>
> A petition for grandchild visitation rights shall be granted only upon a finding that the visitation is in the best interests of the child.

Apparently the provision principally relied on by the trial court in granting the Crawleys visitation privileges is paragraph 3 of section 598.35.

Section 598.35 was placed in the chapter of the Code on marriage dissolutions, but this appears to be the action of the Code Editor. The act which created section 598.35 was an independent one containing only the provisions of that section; it was not amendatory of chapter 598 or any other chapter. 1974 Session, 65th G.A., ch. 1253.

In applying statutes similar to section 598.35, the courts in several jurisdictions have had to resolve an apparent conflict between those statutes and the adoption laws. This conflict involves tension between the goals of creating a new family unit for adopted children, on the one hand, and of allowing continuing grandparental contact with grandchildren who have lost a parent, on the other.

This state's policy of providing a "fresh start" for adopted children is reflected in section 600.13(4) of the adoption chapter, which provides that

> [a] final adoption decree terminates any parental rights, except those of a spouse of the adoption petitioner, existing at the time of its issuance and establishes the parent-child relationship between the adoption petitioner and the person petitioned to be adopted. Unless otherwise specified by law, such parent-child relationship shall be deemed to have been created at the birth of the child.

*See also* §§ 600.16, 600.24 (restrictions on access to adoption records); § 600.13(5) (issuance of new birth certificate).

A. Jurisdictions which have addressed the question of whether an adoption decree which terminates parental rights also terminates rights provided by grandparental visitation statutes are split on the issue. Apparently the greater number hold that adoption does not permit a legal grant of visitation privileges to natural grandparents. *See Poe v. Case*, 565 S.W.2d 612, 614 (Ark.1978); *Lee v. Kepler*, 197 So.2d 570, 573 (Fla.Dist.Ct.App.1967); *Browning v. Tarwater*, 215 Kan. 501, 506, 524 P.2d 1135, 1139 (1974); *Smith v. Trosclair*, 321 So.2d 514, 516 (La.1975); *Bikos v. Nobliski*, 88 Mich.App. 157, 163, 276 N.W.2d 541, 544 (1979); *Levine v. Rado*, 54 Misc.2d 843, 845, 283 N.Y.S.2d 483, 486 (Sup.Ct.1967); *Acker v. Barnes*, 33 N.C.App. 750, 752, 236 S.E.2d 715, 716, *cert. denied*, 293 N.C. 360, 238 S.E.2d 149 (1977); *In re Fox*, 567 P.2d 985, 986 (Okl.1977); *Deweese v. Crawford*, 520 S.W.2d 522, 526 (Tex.Ct.App.1975). *See also*, 2 Am.Jur.2d *Adoption* § 85, at 929 (1962) ("[W]here the adoption statute gives the adopted child the status of a natural child and frees the natural parents of legal obligations toward it, a court in granting an adoption decree is without authority to include in the adoption decree a grant of visitation privileges to the parent or mem-

bers of the parents' family."). Several other courts have found that adoption does not, in all instances, prohibit a grant of visitation by natural grandparents. *See Futral v. Henry*, 45 Ala.App. 214, 215, 228 So.2d 827, 828 (1969) (dictum); *Roquemore v. Roquemore*, 275 Cal.App.2d 912, 917, 80 Cal. Rptr. 432, 435 (1969); *Mimkon v. Ford*, 66 N.J. 426, 437, 332 A.2d 199, 202 (1975); *Scranton v. Hutter*, 40 A.D.2d 296, 299, 339 N.Y.S.2d 708, 711 (Sup.Ct.1973); *Graziano v. Davis*, 50 Ohio App.2d 83, 90, 361 N.E.2d 525, 530 (1976).

Two basic arguments, both policy-oriented, underlie the reasoning of the courts which hold that adoption prevents a grant of grandparental visitation. In reaching the same result, we rely on only the second of those grounds.

The first reason advanced by the courts is that grandparental visitation, when against the wishes of the adoptive parents, would *never* be in the best interests of the child. *See Browning*, 215 Kan. at 507, 524 P.2d at 1139; *In re Fox*, 567 P.2d at 987. *See also, Graziano*, 50 Ohio App.2d at 89, 361 N.E.2d at 529. The difficulty with such a conclusion is illustrated well, we believe, by the facts of the case before us. Because we are unable to conclude with assurance that a case could not arise in which visitation with a natural grandparent, although against the wishes of the adoptive parents, would ever be in the best interest of the child, we decline to base our decision on that ground.

▮ The second reason advanced, and one we find persuasive, is the legislative provision of section 600.13(4) that the rights of the natural parents are terminated by the adoption decree. We think the legislature intended that the rights of the natural grandparents likewise end. *See, e. g., Lee*, 197 So.2d at 573 ("[A]n adoption decree which can operate to divest a natural parent . . . a fortiori may divest a nonparent."); *Acker*, 33 N.C. at 751–52, 236 S.E.2d at 716 ("By adoption, the adopted child becomes legally . . . a stranger to the bloodline of his natural parents."); *Deweese*, 520 S.W.2d at 526 ("[A]s the children here had been adopted . . . [the

grandparents] were not, in law . . . 'paternal grandparents' of the children.").

The grandparents' status as grandparents, and hence their right to visitation under § 598.35, arises by virtue of the child's relationship to the natural parents. When adoption terminates the natural parents' rights in the child and thereby removes the basis for the grandparents' rights, the grandparents' rights also end.

That a parent gives a child in adoption does not necessarily mean the parent is evil. Many parents are compelled to do so by dire circumstances yet, except for the adopter's spouse, adoption "terminates *any* parental rights." § 600.13(4) (emphasis added). We would attribute a strange intention to the legislature were we to read section 600.13(4) as saying that any *parental* rights cease but *grandparental* rights to see and visit the child survive. We are inclined to think the legislative purpose in section 600.13(4), and in the confidentiality sections which accompany it, is to drop a curtain between the child and the blood relatives.

B. At least one court has suggested that the policy justification for terminating the natural family relationship in adoption decrees—prevention of interference in the development of a good relationship between the child and the adoptive parents—does not apply as strongly in the case of grandparents as it does in the case of parents. *Mimkon*, 66 N.J. at 436, 332 A.2d at 204. We agree that the grandparental role may be of a different nature than the parental role. We are unable to assume, however, that such difference renders continued contact by a natural grandparent any less a threat to the relationship between the adoptive parents and child than continued contact by the natural parent.

*Mimkon* also suggests that grandparental visitation with adopted children should be approached on a case-by-case basis because the purpose for severing natural family ties only applies to some types of adoption decrees. *Id.* at 434, 332 A.2d at 203. The *Mimkon* court argued that the adoption statute "is principally concerned with adoptions by persons other than relatives of

children 'placed for adoption' because their [natural] parents are unwilling or unable to care for them." *Id.* The court went on to reason that since the policy justification for terminating natural familial ties is only present in certain types of adoptions, courts should be free to order grandparental visitation in those adoptions where it is absent.

We do not believe that our adoption statute allows us to follow the *Mimkon* reasoning, were we inclined to do so. Section 600.13 provides except for spouses for the termination of natural parental rights in adoption decrees. It contains no distinctions as to who the adopting parents are or what the reasons for the adoption may be. We decline to read distinctions into our adoption statute which are not there. We conclude the public policy reflected in section 600.13 "demands that an adoption carry with it a complete breaking of old ties." *Browning*, 215 Kan. at 506, 524 P.2d at 1139.

C. We therefore hold that section 598.35 does not authorize grandparental visitation privileges when a child is adopted. This reading of the statute is bolstered by the wording of section 598.35 itself. Although the section specifically provides that visitation may be ordered when "[t]he child has been placed in a foster home," § 598.35(4), it makes no mention of visitation in the case of adoption. Because placement in a foster home is related in a sense to adoption—both may involve physical separation of the child from the natural parents—we think that the legislature would likely have mentioned adoption in section 598.35 had it intended grandparental visitation to be available in such cases.

■ IV. When a court acts without legal authority to do so, it lacks jurisdiction of the subject matter. *See State ex rel. Cairy v. Iowa Co-Operative Association*, 248 Iowa 167, 169–70, 79 N.W.2d 775, 776 (1956). Because the original grant of visitation privileges to the Crawleys was made without legal authority, the adoption court lacked jurisdiction to enter that portion of its decree.

■ The effect of action taken by a court without jurisdiction of the subject matter is that the action is void. *See Collins v. Powell*, 224 Iowa 1015, 1020, 277 N.W. 477, 481 (1938). Consequently the portion of the adoption decree granting visitation privileges to the Crawleys is of no legal effect.

■ Since no legally cognizable visitation rights were granted by the adoption decree, no visitation rights existed to be modified in this proceeding. The present trial court had no jurisdiction to modify nonexistent visitation rights, and this court has long held that it has no jurisdiction of subject matter over which the trial court lacks jurisdiction. *Federal Land Bank of Omaha v. Jefferson*, 229 Iowa 1054, 1060, 295 N.W. 855, 858 (1941); *In re Appeal of Head*, 141 Iowa 651, 663, 118 N.W. 884, 889 (1908) ("As the district court of Greene County had no jurisdiction of the matter, we do not on appeal, and this is an end to the controversy."). We must thus dismiss the appeal.

We do not address property questions in this opinion, whether arising from inter vivos transactions or under wills or by intestate succession. *See, e. g., Wagner v. Varner*, 50 Iowa 532, 535 (1879); Comment, 55 Iowa L.Rev. 739, 745–46 (1970). Such questions are not now before us for decision. Neither do we consider the question whether a court may "modify" an adoption decree after it is entered. *Cf.* § 598.21, The Code (modification of dissolution decrees); § 600.7, The Code 1975 (prior provision authorizing nullification of adoptions).

APPEAL DISMISSED.