Beverly A. PATTERSON, Appellant,

v.

David KELEHER, Appellee.

No. 84–24.

Supreme Court of Iowa.

March 20, 1985.

James W. Redmond and John D. Ackerman of Gleysteen, Harper, Eidsmoe, Heidman & Redmond, Sioux City, for appellant.

Edward J. Keane and Alice S. Horneber of Margolin, Gildemeister & Willia, Sioux City, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, LARSON, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

This appeal from a contempt proceeding requires us to analyze, for the first time,

whether a grandparent's court-decreed right to visit a grandchild survives that child's adoption by a stepparent. Trial court held the adoption, granted without notice to the grandparent, cut off the latter's rights and dismissed the contempt action against the natural father who refused visitation. We reverse and remand for further proceedings.

The record discloses a tragic history. May 3, 1980, Betsy Luane Weed Patterson (Luane) gave birth to an illegitimate child whom she named Nicholas Allen Patterson. The birth certificate designated the respondent, David Keleher, as the father. David initially denied paternity. Luane and Nicholas lived with Luane's mother, the petitioner Beverly A. Patterson, then age thirty-seven, in her Sioux City home.

May 10, 1980, the state of Iowa brought an Iowa Code chapter 252A paternity action against David to establish that Nicholas was David's son and to require him to pay the child's birth expenses and support. At that time David was living with Penny Peterson and her two sons. The dissolution of her marriage to Peterson was finalized in July 1980. Penny and David were married September 25, 1980. David's two children by a prior marriage, whom he neither visits nor supports, have no role in this controversy.

On the night of June 16, 1980, Beverly's house was engulfed in a fire, apparently caused by a faulty fan. All three of her children perished, including Luane. Nicholas was rescued through Beverly's efforts. The record reflects Nicholas was beneficiary of a $10,000 life insurance policy Luane carried through a local bank, and there was a potential product liability claim arising from the circumstances of her demise.

Following Luane's death David, reversing his prior position, appeared at the county attorney's office on June 23, 1980, and signed a stipulation agreeing that he was Nicholas' father.

After the fire, Beverly made numerous attempts to establish her legal custody of Nicholas. She filed an Iowa Code chapter 232 (child in need of assistance) petition and secured an ex parte order naming her Nicholas' temporary legal guardian and custodian. Later, this action was dismissed. March 31, 1981, Beverly filed an Iowa Code chapter 598A custody action that ultimately went to trial on March 30, 1982. During all this time Nicholas remained in his grandmother's home, with David exercising visitation rights pursuant to a court-approved stipulation.

May 28, 1982, the trial court filed its decree. The court found David to be Nicholas' father (an issue Beverly had contested) and awarded him custody effective June 1, 1982, subject to Beverly's right to visitation. The decree provided for her visitation on alternate weekends and certain holidays, and for four-week summer visitations between June 1 and September 10. Beverly was to give David a thirty-day notice of the time she elected for summer visitation. Beverly appealed from this decree, which ultimately was affirmed by the Iowa Court of Appeals on February 23, 1983. 339 N.W.2d 170.

Three months following the decree, on August 27, 1982, Beverly filed the first of two applications in this proceeding to have David found in contempt of court and punished for not allowing the summer visitation. David contended he had not received Beverly's notice. Further, he demanded written assurance the child would be returned. Upon submission of the application on November 1, 1982, the court found David improperly had refused visitation following timely notice and ordered visitation during two subsequent two-week periods.

August 11, 1983, Beverly again filed application to have David found in contempt of court for his failure to provide her weekend and summer visitation. David filed a resistance, alleging Penny (his wife) had adopted Nicholas by decree filed July 22, 1983, this adoption extinguished Beverly's visitation rights under the holding in *In re Adoption of Gardiner*, 287 N.W.2d 555 (Iowa 1980), and no notice of the adoption petition was required to be served on Beverly.

By ruling dated October 12, 1983, the district court dismissed Beverly's application to have David held in contempt, finding the stepmother's adoption of Nicholas terminated all visitation rights of his maternal grandmother, citing *Gardiner.* The court further concluded the failure to give Beverly ·notice of the adoption petition did not deprive her of due process, she not being a person entitled to notice under the relevant adoption statutes, Iowa Code sections 600.7 and 600.11.

It is from this order that Beverly timely appealed. She asserts trial court erred in not finding David in contempt for failing to comply with the custody decree. Beverly further contends the court erred in holding the visitation rights she enjoyed under that decree could be terminated in an adoption proceeding without notice and opportunity for her to be heard; that such a result would violate the respective due process clauses of the United States and Iowa constitutions.

 I. We may review a trial court's dismissal of an application for contempt or its refusal to find a party in contempt upon a direct appeal by the aggrieved party. *State v. District Court,* 231 N.W.2d 1, 4 (Iowa 1975). Our review is not de novo; while we give much weight to the trial court's findings of fact, we are not bound by them. *Orkin Exterminating Co. v. Burnett,* 160 N.W.2d 427, 431 (Iowa 1968); *Watson v. Charlton,* 243 Iowa 80, 92, 50 N.W.2d 605, 612 (1951). Where there is a finding of contempt, we assure ourselves the proof is clear and satisfactory. *Lutz v. Darbyshire,* 297 N.W.2d 349, 353 (Iowa 1980); *Lane v. Oxberger,* 224 N.W.2d 245, 247 (Iowa 1974).

 Here there was no evidence introduced upon submission of the contempt application in district court. The parties merely stipulated that the matter be submitted "on the basis of the filings filed and to be filed," that David had refused "visitation rights" as provided in the custody decree, and that Penny had adopted Nicholas on July 22, 1983. Beverly only indirectly asserts on appeal that she was deprived of weekend visitation prior to the adoption, and the meager stipulation in trial court will not support such a finding. There thus remains not a fact question but a legal issue: Did the adoption without notice and opportunity to be heard automatically terminate Beverly's court-decreed visitation rights and thus justify David's refusal to allow the summer visitation? The deference we ordinarily accord a trial court's fact-findings in non-equity cases does not, of course, preclude our inquiry into whether it applied erroneous rules of law that materially affected its decision. *Miller v. Berkoski,* 297 N.W.2d 334, 337–38 (Iowa 1980); *see Gere v. Council Bluffs Community School District,* 334 N.W.2d 307, 309 (Iowa 1983); *R.E.T. Corp. v. Frank Paxton Co.,* 329 N.W.2d 416, 418–19 (Iowa 1983).

II. Our analysis must begin with an examination of Beverly's right and interest in visitations with Nicholas under a decree apparently based on Iowa Code sections 598A.2(2) and 598.35.[1] By the latter enactment, the legislature recognized certain exceptions to the rule that grandparents have no common law right to visitation. *Olds v. Olds,* 356 N.W.2d 571, 573 (Iowa 1984). In the specified circumstances, that section authorizes the court, exercising its sound discretion, to grant such a right after finding the visitation would be in the best interests of the grandchild. Here the trial court's custody determination included an award of visitation rights, as permitted by

---

1. Iowa Code section 598.35 provides:
 Grandparents visitation rights. The grandparents of a child may petition the district court for grandchild visitation rights when:
 1. The parents of the child are divorced, or
 2. A petition for dissolution of marriage has been filed by one of the parents of the child, or

3. The parent of the child, who is the child of the grandparents, has died, or
 4. The child has been placed in a foster home.
 A petition for grandchild visitation rights shall be granted only upon a finding that the visitation is in the best interests of the child.

Iowa Code section 598A.2(2).[2] *See Slidell v. Valentine*, 298 N.W.2d 599, 606 (Iowa 1980) ("Rights of visitation ... may be resolved under uniform act proceedings. § 598A.2(2), The Code.").

Iowa Code section 598.35 is nothing more than a statutory extension of the common law concept of the state's role as parens patriae. *Helton v. Crawley*, 241 Iowa 296, 309–18, 41 N.W.2d 60, 67–73 (1950).

> In cases involving the custody of minor children, whether it be by divorce or separation proceeding, by habeas corpus, ... or other equitable proceeding, the court, as a department of the state, in thus exercising its inherent power and jurisdiction in equity, is spoken of as acting in the capacity of parens patriae.

*Id.* at 312, 41 N.W.2d at 70.

Once made, the custody determination in this case, including the visitation provisions, was sheltered under the provisions of Iowa Code section 598A.12:

> A custody decree rendered by a court of this state which had jurisdiction under section 598A.3 binds all parties who have been served in this state .... As to these parties the custody decree is conclusive as to all issues of law and fact decided *and as to the custody determination made*, unless and until that determination is modified pursuant to law.

(Emphasis added.)

"Custody determination," as we have noted, is defined as including an order for visitation rights. Iowa Code § 598A.2(2) (1983). Thus David was bound under Iowa Code section 598A.12 to accord such rights, until that order was modified. *See* Iowa Code § 598A.3 (1983), *amended by* 1983 Iowa Acts ch. 101, §§ 119, 120. This being so, he was properly before the district court for refusing to obey the decree[3] unless, as he contends, Beverly's visitation

rights were extinguished, without notice or hearing, by the adoption decree. We explore this issue in the next division.

III. In holding that Penny's adoption of Nicholas cut off Beverly's visitation rights without notice or hearing, the district court relied solely on *Gardiner*, 287 N.W.2d 555. *Gardiner* is distinguishable because the precise legal issue in that case is not the issue here. In *Gardiner* the question was whether the district court had jurisdiction to order grandparent visitation in the course of an adoption proceeding. *Id.* at 556 ("[W]e find the appeal turns on the power of an adoption court to grant visitation."). In the case now before us, the legal question is whether a decree of adoption automatically cuts off rights of grandparent visitation awarded in a separate, valid decree by a court with jurisdiction of the parties and the subject matter. *Gardiner* does not hold that a decree of adoption automatically nullifies another valid decree, though David would like us to read it that way.

*Gardiner* also is distinguishable on its facts. The opinion reasoned that adopted children should have a "fresh start," which demands the "complete breaking of old ties." *Id.* at 557, 559. In a case such as *Gardiner*, which was not a stepparent adoption, the policy of giving the child a "fresh start," free from interference by past ties, may be compelling. This "fresh start" policy, however, is much less compelling where, as here, the child is adopted only by a stepparent. In a very real sense, in such an adoption, the status of the child changes very little. A natural parent remains a parent. The child's home does not change. The adults caring for him or her are the same. In many cases the child's name will not change. If there is any real change, it is primarily in the status of the adopting parent. *See Reeves v. Bailey*, 53

---

**2.** Iowa Code section 598A.2(2) provides:
 "*Custody determination*" means a court decision and court orders and instructions providing for the custody of a child, *including visitation rights* ....
 (Emphasis added.)

**3.** *See In re Marriage of Welsher*, 274 N.W.2d 369, 371–72 (Iowa 1979) ("If there is jurisdiction of the parties and legal authority to make an order, the order must be obeyed however erroneous or improvident.").

Cal.App.3d 1019, 1026, 126 Cal.Rptr. 51, 56 (1975) (The rule that all prior visitation orders are necessarily extinguished by adoption "is a good statement of principle in a normal adoption where the child receives two new parents and both of the natural parents and their families are substituted out. Where this is not so, however, the principle loses its rationale and will not be blindly or mechanically applied ...."). *In re Marriage of O'Connell,* 80 Cal.App.3d 849, 858–59, 146 Cal.Rptr. 26, 32 (1978); *Roquemore v. Roquemore,* 275 Cal.App.2d 912, 916–17, 80 Cal.Rptr. 432, 435 (1969).

David defensively contends Iowa Code section 600.11(2), specifying the persons entitled to notice of an adoption proceeding, makes no mention of persons with visitation rights. That section, however, does require notice to a custodian of the child. We already have noted the nexus between custody and visitation in Iowa Code section 598A.2(2) ("Custody of a child, including visitation"). In Iowa Code section 598A.9 ("Information submitted to court") persons with visitation rights are equated with those having physical custody. They must be notified and brought in as additional parties. Iowa Code § 598A.10. The expressed legislative intent that a person with visitation rights must be noticed in an Iowa Code chapter 598A custody adjudication is a clear indication the legislature must have envisioned a broad concept of the "custodian" required to receive notice in the more drastic and final adoption proceeding. We agree with the jurisdictions that hold "custody" (custodian) has no fixed legal significance, *Delgado v. Fawcett,* 515 P.2d 710, 712 (Alaska 1973), and that visitation, at least in this context, is a form of custody. *People v. Harrison,* 82 Ill.App.3d 530, 532, 37 Ill.Dec. 820, 822, 402 N.E.2d 822, 824 (1980).

It follows that Beverly, with a standing adjudication granting her visitation with Nicholas, was a "custodian" entitled to notice of Penny's adoption petition under Iowa Code section 600.11(2) (1983). We are not concerned here with what effect failure to give that notice had on the adoption.

*See In re Adoption of Cheney,* 244 Iowa 1180, 1189, 59 N.W.2d 685, 689 (1953); *Reeves v. Bailey,* 53 Cal.App.3d at 1022, 126 Cal.Rptr. at 53–54. It is sufficient to hold, as we do, that the adoption did not affect the validity of the decree that granted Beverly the right of visitation.

The case is remanded to district court for further proceedings in the contempt proceeding, in light of this opinion.

REVERSED AND REMANDED.