**In the Interest of A.C. and L.C., children.**

**Appeal of C.E. and A.E.**

**No. 87–454.**

Supreme Court of Iowa.

Aug. 17, 1988.

Timothy O'Grady, Council Bluffs, for appellants.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for appellee.

William R. Hughes, Jr., of Stuart, Tinley, Peters, Thorn, Smits & Sens, Council Bluffs, guardian ad litem.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and ANDREASEN, JJ.

LAVORATO, Justice.

In this case the Iowa Department of Human Services asks us to decide whether the brother of a boy who was sexually abused by their parents should have limited and supervised visitation with their maternal grandparents.

The grandparents, Charlotte and Albion, petitioned for visitation with the boys under Iowa Code section 600A.10 (1987)[1] after the rights of the parents, Gary and Christi, were terminated. The district court decided that neither Adam, the abused child, nor Lea, his brother, should have any contact with their grandparents. The court of appeals affirmed the district court judgment regarding Adam but found that Lea's best interests would be served by limited and supervised visitation with his grandparents.

The department now seeks further review of the court of appeals decision allowing post-adoption visitation with Lea. The department does not challenge the court's decision allowing pre-adoption visitation.

We think the court of appeals was correct in allowing the grandparents pre-adoption visitation with Lea, but it had no authority to allow any visitation in case of his adoption. Accordingly, we vacate the court of appeals decision and affirm in part and reverse in part the judgment of the district court.

I. In 1973 Adam was born to Christi while she was unmarried. Christi married Gary in 1977, and he later adopted Adam. The couple's son Lea was born in 1979.

In July 1981 Gary was arrested at a Council Bluffs drugstore after he picked up developed photographs showing both him and Adam in various sexual poses. When the police searched the family's house pursuant to a warrant, they found hundreds of photographs depicting Christi or her younger sister, who was then about thirteen years old, in the nude or engaging in sexual acts with Gary. The police also seized pornographic magazines and many more photographs, all showing nude preteen or teenage females. Some of the photographs show Gary engaging in sexual acts with such girls while Adam was present.

Immediately following their father's arrest, Adam and Lea were taken into protective custody. One week later, following a hearing, Adam was placed in a foster home, and Lea was returned to his mother's custody. On the same day a petition was filed, alleging that Adam and Lea were children in need of assistance. The petition asserted that the boys (1) had suffered or were likely to suffer harmful effects as a result of their parents' failure to exercise reasonable care in supervising them, or (2) had been used for photographs depicting sexual activities. *See* Iowa Code § 232.2(5)(c)(2), (i) (1981). A later petition alleged that Lea was imminently likely to be physically abused. *See id.* at § 232.2(5)(b).

Both Adam and Lea were subsequently found to be children in need of assistance. Both were placed in foster care under the department's guardianship, and review hearings in the following year found their statuses unchanged.

In September 1981, Gary pleaded guilty to one count each of sexual exploitation of a child and lascivious acts with a child. *See id.* at §§ 728.12, 709.8. By the next year Christi's role in the sexual abuse of Adam became known, and in February 1983 she pleaded guilty to a charge of indecent contact with a child. *See id.* at § 709.12 (1983). Gary received concurrent prison sentences of ten and five years, and Christi received a sentence of two years.

1. Section 600A.10 was repealed by 1987 Iowa Acts ch. 159, § 10.

In 1983 the department petitioned to terminate the parents' rights to both children. *See id.* at §§ 232.111, 232.116(3), (5). Christi's parents, Charlotte and Albion, were intervenors in the case.

The district court's opinion in the termination action reveals the details of the sexual abuse to which Adam was subjected. His parents, both individually and together, engaged in a wide variety of sexual acts with Adam. The evidence also indicated that Gary had shown Adam pornographic films and photographs, and had encouraged the boy to bring other children to their home.

At trial, Gary admitted his own contacts with Adam and his long history of similar acts with young girls. One such involvement was with Christi's younger sister over a four-year period. Gary's sexual contacts with Christi's sister sometimes occurred in the home of Charlotte and Albion, who were occasionally present but unaware of these activities.

Both Gary and Christi denied allegations of Christi's sexual involvement with Adam. Photographs and the boy's statements, however, contradict these denials.

Because of the extensive sexual abuse by his parents, Adam was, at the time of the termination trial, sexually aggressive toward other children. For example, he had apparently had sexual contact with his brother Lea at his grandparents' home. As with Gary's abuse of Christi's sister there, however, Charlotte and Albion were unaware of the improper behavior.

The district court terminated Gary's and Christi's parental rights. Adam was placed in the custody of the department, while Lea was placed with Charlotte and Albion.

Reviewing this decision, the court of appeals affirmed the ruling regarding Adam but ordered that Lea be removed from his grandparents' custody. The court instead placed Lea with the department, giving several reasons why the grandparents were unsuitable for custody: Charlotte was committed to the belief that Christi had not abused Adam, despite overwhelming evidence to the contrary; the grandparents had not recognized Adam's emotional and

sexual problems, even though they had had frequent contact with him; they had not been aware of Gary's sexual abuse of their younger daughter, which had occurred regularly in their own home; they had not known about Adam's sexual contact with Lea in their home; and they might allow further contact between Lea and his mother, thereby increasing the possibility of sexual abuse.

The court concluded by saying that "grave questions remain as to the ability of [Charlotte and Albion] to spot future emotional problems [Lea] may encounter. For these reasons, we believe that it is in the best interest of [Lea] that guardianship of [him] be awarded to the Department of Human Services." We denied further review of this decision.

The grandparents later filed for visitation with both boys under Iowa Code section 600A.10 (1987). The department was named as the respondent. At the hearing on this petition, department representatives familiar with the case advised against visitation with Adam but did not oppose visitation with Lea.

Some testimony, however, raised problems that might result from visitation with Lea. A department adoption specialist, for example, testified that about half of the potential adoptive parents for Lea would probably drop out of consideration if he were subject to visitation with his original family. A juvenile court officer also opined that Charlotte and Albion might not adequately protect Lea from contact with his mother because of their belief in Christi's innocence.

The district court denied the grandparents visitation with the children. It said such contact would interfere with Adam's therapy and would harm Lea's chances for adoption and place him in danger of contact with his mother.

The grandparents then appealed, and we transferred the case to the court of appeals. That court affirmed the decision regarding Adam but granted the grandparents limited and supervised visitation with Lea until an adoption took place. In the

event of Lea's adoption, visitation rights would be reduced to only written or telephone communication, with personal contact decided by the new parents.

The department now seeks further review of the decision regarding Lea; visitation with Adam is not at issue here. As we said earlier, the department argues only that the court of appeals' post-adoption provision is erroneous. The grandparents and the guardian ad litem both contend that the district court erred by denying visitation with Lea.

II. In *In re Adoption of Gardiner*, we held that in cases of adoption, no authority exists for permitting grandparent visitation. 287 N.W.2d 555, 556–59 (Iowa 1980). The adoption court had included grandparent visitation in an adoption decree, which the adoptive parents challenged in a modification proceeding. *Id.* at 556. We rejected the argument that section 598.35 (1977),[2] which expressly allowed grandparent visitation in several situations, could be used as a vehicle to provide such authority. *Gardiner*, 287 N.W.2d at 558. We did so because we were convinced that section 600.13(4), which provided that a final adoption decree terminated parental rights, evidenced the legislature's intent to terminate the rights of natural grandparents as well. *Gardiner*, 287 N.W.2d at 558. Viewing grandparents' rights as derivative of the rights of their child, we said:

> The grandparents' status as grandparents, and hence their right to visitation under section 598.35, arises by virtue of the child's relationship to the natural parents. When adoption terminates the natural parents' rights in the child and thereby removes the basis for the grandparents' rights, the grandparents' rights also end.

*Id.*

Several years later, in two cases, we retreated from the strict approach we adopted in *Gardiner*. *See Patterson v. Keleher*, 365 N.W.2d 22, 25–26 (Iowa 1985); *In re Guardianship and Conservatorship of Ankeney*, 360 N.W.2d 733, 737 (Iowa 1985). Both cases involved stepparent adoptions, and both squarely raised the issue whether grandparent visitation decreed by court order survives a stepparent adoption. In both instances we said it did. *Patterson*, 365 N.W.2d at 25; *Ankeney*, 360 N.W.2d at 737. In *Patterson*, the court order was entered in a chapter 598A custody proceeding. 365 N.W.2d at 23. And in *Ankeney*, it was entered in a guardianship proceeding. 360 N.W.2d at 734.

In both cases the grandparent visitation had already been granted by a court having jurisdiction to do so, whereas in *Gardiner* the visitation had been included in the adoption decree. *See Patterson*, 365 N.W. 2d at 25; *Ankeney*, 360 N.W.2d at 737. In *Patterson*, we recognized that *Gardiner* did not say an adoption decree automatically nullifies another valid decree granting grandparent visitation. 365 N.W.2d at 25. We also chose to further distinguish *Gardiner*:

> *Gardiner* also is distinguishable on its facts. The opinion reasoned that adopted children should have a "fresh start," which demands the "complete breaking of old ties." [*Gardiner*, 287 N.W.2d at 557, 559.] In a case such as *Gardiner*, which was not a stepparent adoption, the policy of giving the child a "fresh start," free from interference by past ties, may be compelling. This "fresh start" policy, however, is much less compelling where, as here, the child is adopted only by a stepparent. In a very real sense, in such an adoption, the status of the child changes very little. A natural parent remains a parent. The child's home does not change. The

**2.** Section 598.35 (1977) provided:

> The grandparents of a child may petition the district court for grandchild visitation rights when:
> 1. The parents of the child are divorced, or
> 2. A petition for dissolution of marriage has been filed by one of the parents of the child, or

3. The parent of the child, who is the child of the grandparents, has died, or
4. The child has been placed in a foster home.

> A petition for grandchild visitation rights shall be granted only upon a finding that the visitation is in the best interests of the child.

adults caring for him or her are the same. In many cases the child's name will not change. If there is any real change, it is primarily in the status of the adopting parent.

*Id.* at 25.

In an apparent response to *Gardiner*, the legislature permitted grandparent visitation in stepparent adoptions. *See* 1986 Iowa Acts ch. 1123, § 1 (codified at Iowa Code § 600A.10 (1987)).[3] Although section 600A.10 was recently repealed, section 598.35 was amended to authorize grandparent visitation rights in stepparent adoptions upon a finding "that the visitation is in the best interests of the child and that the grandparent had established a substantial relationship with the child prior to the filing of the petition." *See* 1987 Iowa Acts ch. 159, § 9.

Recently, we gave approval to a grandparent visitation order entered in a non-stepparent adoption. *In re Guardianship of Nemer*, 419 N.W.2d 582, 585 (Iowa 1988). Although we referred to section 600A.10, we found that we did not need to decide the case under that section. *Nemer*, 419 N.W.2d at 585. Citing *Ankeney* and *Patterson* as authority, we held that the adoption decree did not automatically terminate the visitation order. *Nemer*, 419 N.W.2d at 584. Critical to our holding was the fact that the guardianship proceedings had not been terminated prior to the adoption. *Id.*

III. Thus, this is our first occasion to interpret section 600A.10, the statute under which Charlotte and Albion petitioned for visitation with the two boys. Based on our reading of the statute and the foregoing cases we are convinced no authority exists for post-adoption grandparent visitation under the facts of this case.

We think, for the reasons from *Patterson* quoted above, the legislature intended by section 600A.10 to preserve grandparent visitation only in stepparent adoptions. *See* Iowa Code § 4.6. This intent becomes clear when we read the last unnumbered paragraph of section 600A.10 together with subsection three of the statute. *See id.* at § 4.4(2).

If parental rights are terminated, the statute authorizes grandparent visitation only when the "parental rights of the parent of the child, who is the child of the grandparent, are terminated." *Id.* at § 600A.10(3). Evidently the legislature did not think it necessary to provide for grandparent visitation rights when the grandparents' child has custody, because presumably the grandparents would already have access. The last unnumbered paragraph of section 600A.10 authorizes grandparent visitation in cases of adoption only if the "visitation rights are in the best interest of the child and would not unduly disrupt the child's relationship with the person who has custody of the child, including an adoptive parent." Given the limiting language of subsection three, the "person who has custody" in stepparent adoptions must necessarily include only the natural parent who is not the child of the grandparents.

Having said this, the question still remains whether grandparent visitation rights allowed pursuant to section 600A.10(3) survive an adoption outside of the stepparent context. *Ankeney, Patterson,* and *Nemer* would seem to allow such visitation to continue if it were found to be in the best interests of the child. Adopting such an approach in the present situation,

---

**3.** Iowa Code § 600A.10, *repealed by* 1987 Iowa Acts ch. 159, § 10, provides:

A grandparent of a child may petition the district court for grandchild visitation rights when any of the following circumstances occur:

1. The parent of the child, who is the child of the grandparent, has died.

2. The child has been placed in a foster home.

3. The parental rights of the parent of the child, who is the child of the grandparent, are terminated pursuant to section 232.117 or 600A.9 or a petition to terminate parental rights has been filed pursuant to section 232.-111 or 600A.5.

A petition for grandchild visitation rights shall be granted only upon a finding that the visitation rights are in the best interest of the child and would not unduly disrupt the child's relationship with the person who has custody of the child, *including an adoptive parent.* (Emphasis added.)

however, would frustrate the legislature's intent to limit such grandparent visitation to stepparent adoptions. We therefore hold that grandparent visitation rights allowed pursuant to section 600A.10(3) are automatically terminated in cases of adoption by persons other than stepparents.

We recognize that drawing such a bright line may seem unduly harsh when, for example, relatives of a natural parent adopt the child. We think, however, that it would be the exception rather than rule for such an adoptive parent to balk at grandparent visitation. *But see, e.g., Nemer,* 419 N.W. 2d at 583.

Here the parental rights of both parents were terminated, so there can be no stepparent adoption. Clearly, then, section 600A.10 provides no authority for grandparent visitation in case of Lea's adoption. *Cf. Gardiner,* 287 N.W.2d at 559. The court of appeals erred in granting post-adoption visitation in the nature of written or telephone communication with Lea, and its decision is vacated. If Lea is adopted, the limited visitation granted by the court of appeals shall automatically terminate.

Although the *Ankeney, Patterson,* and *Nemer* holdings are still viable under their particular facts, they are no support for these grandparents' position. The grandparents here do not seek to enforce a previous visitation order issued by a court having jurisdiction to do so. Instead, they are trying to establish post-adoption visitation rights under section 600A.10.

The facts here demonstrate the wisdom, in most cases, of not imposing grandparent visitation upon adoptive parents in other than stepparent adoptions. The number of prospective adoptive parents for Lea would be significantly reduced because of the court-imposed grandparent visitation. Further, there is a real danger of a damaging association between Lea and his natural mother in light of the grandmother's reluctance to admit Christi's guilt. Not only could this be psychologically devastating to Lea, but it could also unduly disrupt his relationship with his adoptive parents.

IV. For all of these reasons, we vacate the decision of the court of appeals. We reverse the judgment of the district court regarding pre-adoption visitation; in all other respects, we affirm the judgment of the district court.

COURT OF APPEALS DECISION VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART.