**In the Matter of ADOPTION OF K.T., A Minor Child,**

**D.D. and C.D., Objectors–Appellants.**

No. 92–153.

Court of Appeals of Iowa.

Dec. 29, 1992.

Bradford F. Kollars, Sioux City, for objectors-appellants.

Debra Y. Lulf, Sioux City, guardian ad litem for the appellee child.

HABHAB, Judge.

Martin and Jill Howard [1] are the adoptive parents of Kay [2], who was born on March 28, 1988. Except for three days after birth, Kay has lived in the Howard home. Their home has provided Kay with a stable environment where her emotional, mental, and physical needs have been provided in a nurturing manner since birth.

Kay's paternal grandfather now seeks to have the adoption decree set aside. We note that neither the biological mother nor the biological father challenge the final adoption decree.

The district court denied the relief asked for by the grandfather. We affirm the district court and hold that he does not have standing to challenge the adoption decree. Accordingly, we affirm its validity.

### FACTS

After Kay's birth, the natural mother placed Kay with the Iowa Department of Human Services (DHS) for foster care placement. DHS then placed Kay in the foster care of appellees Martin and Jill Howard. Neither Kay's biological father nor her biological mother has had the care of Kay for any period of time.

On January 5, 1989, Kay was adjudicated a child in need of assistance and, later, the juvenile court entered an order terminating the parental rights of the natural parents. [3] It further ordered the guardianship and custody of Kay be transferred to the DHS.

---

1. M.H. and J.H. are appellees' initials. Martin and Jill Howard are not their given names.

2. K. is the child's first initial. Kay is not her given name.

3. Although the biological mother presented evidence in resistance to termination of parental rights, the biological father did not.

In its order terminating parental rights, the juvenile court made extensive findings. It found that the biological father "has been conspicuous in this action only by his absence." It further found that the father had taken no affirmative steps to be involved with Kay nor had he contacted her for over a year and a half. The juvenile court noted that the biological father had himself been declared to be a child in need of assistance and a delinquent in juvenile court and "has a history of antisocial behaviors including the sexual molestation of his younger brothers."

In addition, the juvenile court found that the grandfather's three older sons, which includes the father of Kay, have all presented "behavioral and/emotional problems necessitating juvenile court intervention with the need for ongoing therapeutic services for one of them." Further, the juvenile court found one of the grandfather's children is presently under the jurisdiction of the juvenile court and in placement at the Cherokee Mental Health Institute.

After the juvenile court entered its order terminating parental rights, Martin and Jill Howard filed a petition for adoption of Kay. Consent to the adoption was granted by Kay's custodian, the DHS. The district court entered a final adoption decree awarding the child to the Howards.

After the adoption decree was entered, the paternal grandparents filed a petition seeking to set aside the decree of adoption. They asserted they were custodians of Kay, and as custodians, were entitled to notice of the filing of the adoption petition. It appears that when the termination of parental rights order was entered a provision was inserted that provided:

> IT IS FURTHER ORDERED that **pending adoptive placement of [Kay] ..., [the grandparents] ... continue to be allowed grandparental visitations with [Kay]** ... as is agreed upon between the Iowa Department of Human Services case worker assigned to the case, the foster parents and [the grandparents]. ...

(emphasis added). They asked the court to vacate the adoption decree.

In answer to the petition to vacate the adoption decree, Martin and Jill Howard filed a motion to dismiss, asserting the district court lacked subject matter jurisdiction and the grandparents lacked standing to attack the adoption decree. After a hearing on the motion to dismiss, the district court entered a ruling on the petition to vacate the adoption decree. It rejected their claim that they were entitled to notice of the adoption proceedings and concluded they lacked standing to petition for vacation of the adoption decree. It further found any visitation rights granted by the court pursuant to section 598.35(4) were automatically terminated by an adoption decree not involving a stepparent.

The grandfather and stepgrandmother appeal contending essentially that the adoption decree should be vacated for they did not receive notice of the adoption proceedings.

We affirm.

## SCOPE OF REVIEW

■ In this equity action, our review is de novo. Iowa R.App. P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App. P. 14(f)(7).

## ANALYSIS

We agree with the guardian ad litem that while the district court treated the hearing on a motion to dismiss as a hearing on the merits, the necessary issues and facts were before it and are now before us. Therefore, we rule on the merits.

The grandparents claim they have standing to petition for the vacation of an adoption decree because they are custodians of the minor child. We disagree. We affirm the district court's dismissal of the appellants' petition to vacate the adoption decree.

We are unable to conclude the grandparents were entitled to notice of the adoption petition. Further, it is clear from the language of the termination decree the visitation rights conferred by the juvenile court in favor of the appellant grandparents were to be exercised *pending adoptive placement* of the minor child.

The record reveals that in the termination order, the court transferred guardianship and custody of Kay to the DHS in accordance with Iowa Code section 232.-117(3)(a) (1989). Kay's custodian, the DHS, consented to the Howards' adoption of Kay.

Iowa Code section 232.2(11) specifically defines the term custodian for use in chapter 232 as follows:

11. "Custodian" means a stepparent or a relative within the fourth degree of consanguinity to a child who has assumed responsibility for that child, a person who has accepted a release of custody pursuant to division IV, or a person appointed by a court or juvenile court having jurisdiction over a child. The rights and duties of a custodian with respect to a child are as follows:

a. To maintain or transfer to another the physical possession of that child.

b. To protect, train, and discipline that child.

c. To provide food, clothing, housing, and medical care for that child.

d. To consent to emergency medical care, including surgery.

e. To sign a release of medical information to a health professional.

All rights and duties of a custodian shall be subject to any residual rights and duties remaining in a parent or guardian.

Iowa Code § 232.2(11) (1989). It is clear from this specific definition the appellants do not meet the requirements of custodians. It follows that they were not entitled to notice of the adoption hearing under Iowa Code section 600.11(2) (1989).

The district court relied upon *In re A.C.*, 428 N.W.2d 297 (Iowa 1988) and *In re Adoption of Gardiner*, 287 N.W.2d 555 (Iowa 1980), and concluded the appellants'

visitation rights were automatically terminated by the adoption decree. We agree.

The appellants' visitation rights were granted pursuant to the provisions of Iowa Code section 598.35 (1989). This section, as amended, contains substantially all of the provisions of Iowa Code section 600A.10(3) (1987), which was relied upon by the Iowa Supreme Court in *In re A.C.*, 428 N.W.2d 297 (Iowa 1988), but has since been repealed by the Iowa legislature. In *In re A.C.*, the court held that "grandparent visitation rights allowed pursuant to section 600A.10(3) *are automatically terminated in cases of adoption by persons other than stepparents.*" *Id.* at 302 (emphasis added).

In *Gardiner*, the court stated the following:

The grandparents' status as grandparents, and hence their right to visitation under § 598.35, arises by virtue of the child's relationship to the natural parents. When adoption terminated the natural parents' rights in the child and thereby removes the basis for the grandparents' rights, the grandparents' rights also end.

[W]e would attribute a strange intention to the legislature were we to read section 600.13(4) as saying that any *parental* rights cease but *grandparental* rights to see and visit the child survive. We are inclined to think the legislative purpose in section 600.13(4), and in the confidentiality sections which accompany it, is to drop a curtain between the child and the blood relatives.

\* \* \* \* \* \*

**We therefore hold that section 598.35 does not authorize grandparental visitation privileges when a child is adopted.**

*Id.* at 558–59 (emphasis added). The court reasoned adopted children should have a "fresh start," which demands the complete breaking of old ties, including visitation by the natural grandparents. *Id.*

The appellants claim the case at bar is controlled by the case of *Patterson v. Keleher*, 365 N.W.2d 22, 25 (Iowa 1985). We

disagree. In *Patterson,* the court distinguished its holding in *Gardiner* and held a stepparent's adoption of a minor child did not cut off the natural grandmother's rights of visitation which were established under a chapter 598A custody decree. *Patterson,* 365 N.W.2d at 24–25. The case provided in pertinent part:

> *Gardiner* also is distinguishable on its facts. The opinion reasoned that adopted children should have a "fresh start," which demands the "complete breaking of old ties." In a case such as *Gardiner,* which was not a stepparent adoption, the policy of giving the child a "fresh start," free from interference by past ties, may be compelling. This "fresh start" policy, however, is much less compelling where, as here, the child is adopted only by a stepparent. In a very real sense, in such an adoption, the status of the child changes very little. A natural parent remains a parent. The child's home does not change. The adults caring for him or her are the same. In many cases the child's name will not change. If there is any real change, it is primarily in the status of the adopting parent.

*Patterson,* 365 N.W.2d at 25 (citations omitted).

*Patterson* is simply an exception for situations where the adopting party is the minor child's stepparent. Neither Martin nor Jill Howard is Kay's stepparent. The "fresh start" policy and its underlying rationale are compelling in the case at bar. We find *Gardiner* and *In re A.C.* to be controlling.

■ We hold the visitation rights granted pursuant to Iowa Code section 598.35(4) are automatically terminated by an adoption decree not involving a stepparent. We also hold the appellant grandparents were not custodians entitled to notice of the adoption hearing for the adoption of their grandchild.

In light of the recently-filed dissent, we believe additional comments are necessary. The dissent, for reasons not entirely clear, seems to find standing to enforce visitation, but declines to find standing to set aside the adoption decree.

This result is sought even though the Howards have had Kay's custody and provided for her entire wants for almost five years now. The disturbing aspect of this position is that neither the biological father nor the biological mother asks for visitation privileges nor do they challenge the adoption decree; and, they should not, for they have not had the care of Kay since her birth and have not made a meaningful attempt to develop a parental relationship.

As the dissent points out, adoption proceedings are purely creatures of statute. In interpreting our statute, our supreme court has held on any number of occasions grandparental rights are derived from parents and when the rights of a natural parent are terminated by adoption the grandparental rights also end.

The Iowa legislature, in view of supreme court decisions, carved out an exception to grandparental rights when it authorized grandparental rights in stepparent adoptions when there is a finding it is in the best interests of the child and a substantial relationship exists prior to the filing of the adoption petition. But, here we do not have a stepparent adoption. It occurs to us that if this basic law is to be changed it should be done by the Iowa legislature and not through judicial decree.

We want to point out the Howards *do not* object to the grandparents visiting with Kay. In fact, by their letter of July 25, 1991 (see petitioner's exhibit 4) they advised the grandparents they were willing to allow visitation between the child and both grandparents. The only thing the Howards objected to was court-ordered visitation rights when under the circumstances here the biological parents cannot even have.

We recognized previously in our opinion the existence of the district court's order entered over the objections of the biological mother that the grandparents have visitation rights. But, it cannot go unnoticed that those rights existed "pending adoptive placement." Adoptive placement has taken place.

If indeed there exists a substantial involvement between the grandparent and the child, we see no reason why visitation should not continue. We in fact encourage it. But the extent of such visitation should be left with the adoptive parents. Why should the rights of adoptive parents to their children be treated any differently than those rights biological parents have? It would seem manifestly unfair to preclude adoptive parents from placing conditions on those who visit their children. For instance, the Howards should be able to say to the grandparents, "You can visit with Kay as long as her biological father, who sexually molested his younger brother, is not present." This is a right that natural parents have and a right adoptive parents should not be denied.

Like in *Gardiner*, we would reach a strange conclusion if we were to say the parental rights of the biological parent cease but the grandparental rights to see and visit the child under court decree somehow survive the adoption decree. We believe Kay is indeed entitled to not only a "fresh start" life with the Howards but a continued life with them under the shelter of their love and protection. Adoption decrees must have a finality, and we believe it to be in Kay's best interest that such finality exists here.

We, of course, agree that public confidence in our court system must be maintained at all costs. Thus, if the grandfather was entitled to notice and did not receive the same, then he is entitled to the relief asked for in his petition.

While we are on the subject of public confidence, we believe it is indispensable to justice in our society that this court address those questions presented to the trial court as they appear in the record. In this respect, we look to the record and the pleadings as filed in the district court.

It is beyond dispute that the grandfather's petition seeks to vacate the decree of adoption on the grounds that he was entitled to notice and did not receive the same. He framed his petition as a "Petition to Vacate a Decree of Adoption"; at paragraph 11 he asks that the adoption petition be vacated in its entirety and in his prayer he asks the district court to sustain his petition and to "vacate the decree of adoption." Putting it quite plainly, the grandfather wants to set aside the adoption decree and have it declared void; a relief, incidentally, that even the biological parents do not seek.

The dissent correctly frames the issue when it states that the question is whether a biological grandfather has standing to challenge an adoption decree entered without notice to him. The dissent believes the grandfather does have standing, but as pointed out earlier, the majority of this court, following the reasoning of the trial court, does not believe that he does.

We believe public confidence in our court system would be seriously impaired if we were to follow the reasoning of the dissent, for on the one hand we would conclude he has standing as to visitation rights, a relief not specifically asked for in his petition, but for some unexplained reason, he does not have standing to challenge the adoption decree, which is the relief asked for.

The dissent insists it is following the procedure as outlined in the *Patterson* case. However, procedurally, *Patterson* was a contempt action where the issue before the supreme court was whether the adoption decree terminated a grandparent's visitation rights. *Patterson*, 365 N.W.2d at 22–23. We have previously distinguished the facts in *Patterson* from the facts in the case at bar, but we hasten to point out that the supreme court also held in *Patterson*, "we are not concerned here with what effect failure to give notice had on the adoption." *Id.* at 26. In *Patterson*, the supreme court specifically referred to the case of *In re Adoption of Cheney*, 244 Iowa 1180, 1189, 59 N.W.2d 685, 689 (1953), a case where the adoption decree was set aside because of failure to give notice to a person having custody of the child at the time of the filing of the adoption petition.

Here, the specific issue is whether the adoption decree should be set aside. We hold that it should not because the grandfather lacks standing.

We affirm the dismissal of the appellants' petition to vacate the adoption de-

cree. After considering all issues presented, we affirm the district court in all respects.

Costs of this appeal are taxed to the appellants.

AFFIRMED.

All Judges concur except SACKETT and SCHLEGEL, JJ., who dissent.

SACKETT, Judge (dissenting).

I dissent.

I would hold the adoption did not affect the validity of a district court decree that granted the grandfather visitation rights. I would find the grandfather has standing to challenge the adoption proceedings. I would reverse the order dismissing his petition and remand to the trial court for the limited purpose of holding a hearing to specify the extent of the visitation. I would affirm the order dismissing the petition of the stepgrandmother. I would not set aside the adoption decree. I would only make it subject to the grandfather's visitation rights.

The question in this case is whether a biological grandfather who has been given visitation rights with a child by a district court has standing to challenge an adoption decree entered without notice to him. The decree made his granddaughter the legal child of long-term foster parents, but failed to recognize visitation rights that had been granted to him by the district court under Iowa Code section 598.35. The grandfather's visitation rights have never been repealed by a district court. The grandfather has had substantial involvement with the child since her birth. The district court, in establishing his grandparent visitation rights, found his visitations with the child were in her best interest. The grandfather had been granted grandparent visitation rights under Iowa Code section 598.35 before the child's parental rights were terminated. When the child's parental rights were terminated, the termination court had found, in making any decision concerning the adoptive placement, the court would give weight and priority to the likelihood the adoptive parents would allow the visitations to continue.

I have serious problems with the majority decision finding the grandfather has no standing. I think in arriving at its decision the majority has incorrectly interpreted current Iowa statutory and case law and has arrived at a decision that jeopardizes the rights of children to maintain ties with biological relatives who, like this grandfather who had the district court establish his visitation rights, have exercised the rights and made considerable and conscious efforts to contribute to the children's welfare.

One of the disturbing things about this case is that the State and the foster parents, despite prior court orders establishing the grandfather's visitation rights and finding visitation was in the child's best interest and determining any decision concerning adoptive placement, *would* give priority to the adoptive parents allowing the grandfather's visitation to continue, elected not to notify the grandfather of the pending adoption petition and conducted the adoption hearing without notice to him. Consequently, the adoptive court was without the benefit of the grandfather being a part of the proceedings. This grandfather did not know a court was in the process of cutting off visitation rights he had exercised with his granddaughter for over two years until after the adoption decree was filed, and the attorney for the former foster parents, now the adoptive parents, said there would be no further visitation rights.

My review of the orders convinces me a person in the grandfather's position would not expect a court to cut off his visitation rights with his grandchild without notifying him of the hearing and giving him the opportunity to be heard. While, as will be discussed later in this dissent, I clearly find the grandfather was entitled to notice, I also find that when hearings such as the adoption hearing are conducted without notice to persons vitally affected, we undermine the public confidence in the courts and our system of justice. It is disappointing to me that the State sought to condone the adoption being handled in this manner.

But irrespective of my strong personal feelings about conducting such proceedings without notifying the grandfather, I also find the majority, in attempting to establish what it calls a "fresh start" for this child, has not followed existing case and statutory law and has deprived the child of an established and beneficial link to her biological family.

The legislature in enacting section 598.35 recognized the importance of grandparents to children. I have found, in examining cases where biological parents do not have adequate parenting skills, that grandparents frequently are able to provide a safety net and stability for children. Furthermore, there is strong evidence that children suffer when biological family ties are severed.

Even if "fresh starts" are the desired result, and my continued study convinces me they may not be the desired result, this is clearly not a fresh start situation.

The adoptive parents took this child as a foster child in April 1988. They did not adopt her until June 1991. During the time the child was in the adoptive parents' foster care, the grandfather exercised his visitation. Therefore, if the grandfather is to continue to have visitation, the child's status will not change. *See In re A.C.*, 428 N.W.2d 297, 300 (Iowa 1988). The court, in talking about a fresh start policy, says, in part, "This 'fresh start' policy, however, is much less compelling where, ... the status of the child changes very little.... The child's home does not change. The adults caring for him or her are the same.... If there is any real change, it is primarily in the status of the adopting parent." *Id.* at 300–01.

The district court in a February 5, 1989 order established visitation rights for the grandfather. After establishing the grandfather had the right of visitation, the district court deferred to the juvenile court the setting and enforcing visitation times and indicated the district court would become involved in that issue only if the juvenile court no longer had jurisdiction. The juvenile court decree terminating the biological parents' parental rights did *not*

terminate the grandfather's visitation rights, nor could it have terminated the visitation order because the visitation order had been entered by the district court.

This case, therefore, is controlled by the case of *Patterson v. Keleher*, 365 N.W.2d 22 (Iowa 1985). *Patterson* determined that an order for visitation rights is a "custody determination" under Iowa Code section 598A.12 and binds all persons who have been served in this State until that determination is modified pursuant to law. *Id.* at 25. The Iowa Department of Human Services appeared and participated in the district court proceeding. Consequently, it was bound by the district court order of February 5, 1989, providing, "The petitioner, D.D., is granted grandparent visitation with the child, ...." Therefore, the order terminating parental rights and granting custody to the Department of Human Services was subject to the visitation provisions of the district court decree, and the department was bound to accord the grandfather these rights until they were modified. *See Patterson*, 365 N.W.2d at 25.

The adoptive parents should also be bound by the visitation order. The adoptive parents did not appear at the hearing in district court establishing the grandfather's visitation. The adoptive mother did appear at the termination hearing. The adoptive parents were well aware of the visitation provisions, because the child went from their home for visitation. Under the directive of *Patterson*, and *In re Guardianship of Nemer*, 419 N.W.2d 582 (Iowa 1988), the right to visitation granted by the trial court in the February 5, 1989 order has never been repealed.

I also disagree with the majority conclusion that the grandfather was not a custodian entitled to notice of the adoption proceeding. Iowa Code section 600.11 provides for notice of an adoption hearing to be given to a custodian. The first error the majority makes is in using the definition of section 232.2(11) to define custodian. This is an adoption. Adoption is purely a creature of statute. The only Iowa statutory authority for adoption is Iowa Code chapter 600. The procedure for an adoption is set

out there. Any failure to follow statutorily prescribed procedures in any material respect is fatal to the power of the court to decree an adoption. *In re Marriage of Holcomb,* 471 N.W.2d 76, 78 (Iowa App. 1991). When the grandfather was afforded visitation rights by the district court under chapter 598, he became a custodian. *See Patterson,* 365 N.W.2d at 26; *see also* Iowa Code § 598.A2.

The majority in reaching its position has put considerable reliance on *A.C. A.C.* is not controlling here. Furthermore, *A.C.* is factually very distinguishable. *A.C.* is a case where grandparents attempted to establish postadoption visitation rights under a specific statute, which has now been repealed. In *A.C.,* 428 N.W.2d at 302, the court recognized the issue in *A.C.* was different from cases where an order for visitation had been issued by a court having jurisdiction to do so, and the visitation order preceded the adoption and was not an attempt to establish postadoption visitation. In *A.C.,* the court recognized the holding of *In re Guardianship and Conservatorship of Ankeney,* 360 N.W.2d 733 (Iowa 1985) (grandparent visitation upheld where it had been ordered by a court having probate jurisdiction prior to the adoption); and *Patterson,* 365 N.W.2d 22 (Iowa 1985) (grandparent visitation had been ordered under chapter 598 prior to the adoption decree); and *Nemer,* 419 N.W.2d at 582 (valid decree of adoption does not automatically terminate prior guardianship order granting grandparent visitation).

The majority also relies on *In re Adoption of Gardiner,* 287 N.W.2d 555 (Iowa 1980). In *Patterson,* 365 N.W.2d at 25, the court recognized "that *Gardiner* does not say an adoption decree automatically nullified another valid decree granting grandparent visitation."

If court ordered grandparent visitation rights are cut off, it should happen after a hearing, not by a summary determination that an adoption will take place without notice.

I would follow the directive of *Patterson,* 365 N.W.2d at 26, and hold that the grandfather's visitation rights were not cut off by the adoption decree.

I would affirm as to the stepgrandmother's appeal. Although I recognize she has shown considerable care and concern for her husband's biological grandchild, she was not granted any visitation rights by the district court. I do not find the legislature has provided for granting visitation to stepgrandmothers.

The majority relies on an interpretation of section 600A.10(3) in finding that section 598.35 *does not* provide for grandparent visitation when a child is adopted.

The situation here is more parallel to *Patterson.* 365 N.W.2d at 26, and *Nemer,* 419 N.W.2d at 584, where critical to the courts' holdings were the fact that the guardianship proceedings had not been terminated prior to the adoption. *Nemer, Ankeney,* and *Patterson* all stand for authority that an adoption decree does not automatically terminate a visitation order. I would reverse.

While the majority seems to think the adoptive parents will give the grandfather visitation, I find no assurance they will, remembering they were parties to the adoption proceeding conducted without notice to the grandfather and after the adoption they discontinued visitation.

SCHLEGEL, J., joins this dissent.