73873. HEARD et al. v. COLEMAN.
(354 SE2d 164)

McMurray, Presiding Judge.

In this appeal, we must determine whether the superior court erred by granting a paternal grandmother's petition for visitation rights after the child was adopted by her stepfather. We think the superior court did err and we reverse.

Plaintiff, who resides in Pennsylvania, is the paternal grandmother of a ten-year-old child. Until recently the child also lived in Pennsylvania with her mother, defendant Wanda Heard. The mother married defendant Joseph Heard. The Heards make their home in Georgia and the child lives with them. The natural father of the child has been serving time in a Pennsylvania prison. He never married the child's mother and he never legitimated the child.

Before the child moved to Georgia, a Pennsylvania court awarded the grandmother "partial custody" of the child on alternate weekends. After the child began living in Georgia, the grandmother filed an action in this State to domesticate the Pennsylvania "custody" decree and to modify the decree to allow for the change of residence of the child. An order was entered in superior court allowing the grandmother to have extended visitation during the summer months and the month of December. Pursuant to the order, the grandmother was to pay the child's travel expenses to and from Pennsylvania.

In the summer of 1985 the visitation privileges awarded to the grandmother were carried out. Then the child was adopted by her stepfather, defendant Joseph Heard. When the grandmother sought to exercise her December visitation rights, the mother refused and the grandmother filed a "motion for contempt, petition to modify and objection to adoption." The mother answered, denying that the grandmother was entitled to relief.

Thereafter, the grandmother amended her petition by requesting visitation rights pursuant to OCGA § 19-7-3 (the "Grandparents' Bill of Rights"). On July 17, 1986, following a hearing, the superior court entered an order granting visitation rights to the grandmother pursuant to that Code section. The mother and adoptive father sought, and we granted, this discretionary appeal. *Held:*

In pertinent part, OCGA § 19-8-14 provides: "A decree of adoption, whether issued by a court of this state or by a court of any other jurisdiction, shall have the following effect as to matters within the jurisdiction of or before a court in this state: (1) Except with respect to a spouse of the petitioner and relatives of the spouse, *a decree of*

*adoption relieves the natural parent(s) of the adopted individual of all parental rights and responsibilities and terminates all legal relationships between the adopted individual and his relatives, including his natural parent(s), so that the adopted individual thereafter is a stranger to his former relatives for all purposes,* including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the individual by name or by some designation not based on a parent and child or blood relationship." (Emphasis supplied.)

The grandmother contends that OCGA § 19-8-14 notwithstanding, the superior court properly awarded her visitation rights pursuant to OCGA § 19-7-3. Subsection (a) of that Code section reads: "Whenever any court in this state has before it any question concerning the guardianship of any minor child or whenever one parent dies or whenever one parent dies and the survivor remarries, regardless of whether the minor child is adopted by its stepmother or stepfather, *or whenever any court has terminated the parental rights of one of the natural parents of the minor child,* the court may, in its discretion pursuant to subsection (b) of this Code section, grant reasonable visitation rights to the maternal and paternal grandparents of the child. Any court granting such rights may issue its necessary order to enforce the grant." (Emphasis supplied.)

The grandmother contends that OCGA § 19-7-3 constitutes an exception to OCGA § 19-8-14. Specifically, the grandmother argues she is entitled to seek visitation because her son's parental rights were terminated in the adoption proceeding. We cannot agree. In *Mitchell v. Erdmier*, 253 Ga. 335 (320 SE2d 163), the Supreme Court made it clear that an adoption "eliminates any claim of right to visitation with the adopted child by a former relative." In so doing, the high court rejected the argument that the "Grandparents' Bill of Rights" is an exception to OCGA § 19-8-14. In the words of the Supreme Court in *Mitchell v. Erdmier*, 253 Ga. 335, 336, supra: "We do not interpret the code section to have this meaning. To do so would frustrate the apparent object of OCGA § 19-8-14, to sever former relations of an adopted child. The only provision which grants grandparents visitation rights after an adoption is the limited one of the death of one parent, the remarriage of the surviving parent, followed by the adoption of the child by the stepparent. *In other adoptions, such as this one, the severance of relationships provision of OCGA § 19-8-14 controls, and no rights of visitation by former grandparents exist.*" (Emphasis supplied.)

In 1986 the legislature reinforced the Supreme Court's interpretation. Via amendment to OCGA § 19-7-3 (c), the legislature made it clear that while grandparents have the right to seek visitation where

custody is in issue, no such right exists in an "adoption in which all legal relationships between the adopted child and the adopted child's relatives have been terminated as provided in Code Section 19-8-14." OCGA § 19-7-3 (c) (Ga. L. 1986, p. 1516).

Since the grandmother's relationship with the child was terminated by the adoption, the grandmother's rights of visitation were cut off. *Mitchell v. Erdmier*, 253 Ga. 335, supra. See also *Sachs v. Walzer*, 242 Ga. 742 (251 SE2d 302). The superior court erred by awarding visitation rights to the grandmother pursuant to OCGA § 19-7-3.

We recognize, of course, the heartache inherent in this case. After all, the child is not an infant. She is ten years old and, presumably, she and her grandmother have established a loving relationship. We are duty bound, however, to give effect to the sound policy expressed by the legislature in OCGA § 19-8-14. *Winter v. Jones*, 10 Ga. 190, 200 (1851). An adoption creates a parent and child relationship between the adopted child and the adoptive parent. OCGA § 19-8-14 (a) (2). The adoptive relationship must be preserved, protected and fostered even if, as it sometimes happens, a former relationship suffers.

*Judgment reversed. Sognier, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur but wish to explain further why I believe the interplay between OCGA §§ 19-8-14 and 19-7-3 lead to the statutory construction extracted by the Court.

I assume for the purpose of this case that the natural grandmother was a legally cognizable grandmother even though the grandchild had never been legitimated by the natural father through whom grandparentage was claimed.

The statute which the grandmother in this case relies on was first passed in 1976. Ga. L. 1976, p. 247. It has been substantially expanded since, beginning with a complete revision as soon as 1980. Ga. L. 1980, pp. 936, 937. The evolving law denotes a public policy favoring a maintenance of the natural grandparent's personal relationship with the grandchild despite a breach in the parents' relationship with each other and with the child. The legislature has carved out a variety of familial situations in which a grandparent's visitation with the child may be judicially recognized and supervised. However, those categories are limited to certain described situations.

The paternal grandmother here contends that subsection (b) (3) of OCGA § 19-7-3 recognizes a right to a grandparent to be considered for visitation even when the legal relationship between that grandparent's child and the grandchild has been judicially terminated. While that is true, it does not extend to cases where not only termination but also adoption has occurred. Termination of a parent's

rights and obligations is one thing, and adoption by a third party is quite another. They are not necessarily simultaneous, and each bears on a different relationship. The legislature did not provide in that subsection for a grandparent when not only termination but also adoption has affected the grandchild's legal parental status.

The same distinction applies to the references to "termination" in subsections (a) and (c). That is made more evident by the second 1986 amendment, effective in this case, which expressly excepted *adoptions* where all legal relationships between the adopted child and the adopted child's relatives were "terminated". That is what occurred here, by operation of law, when the adoption order was entered. It ended the legal relationship between the father and his relatives on the one hand, and the child on the other. Appellant reads it too narrowly when she argues that it refers only to situations in which there is an adoption by two new parents rather than just one.

*Mitchell v. Erdmier*, 253 Ga. 335 (320 SE2d 163) (1984) was decided before the two 1986 amendments, but they did not adversely affect its holding insofar as this present case is concerned. However, it should be noted that *Sachs v. Walzer*, 242 Ga. 742 (251 SE2d 302) (1978), the other case cited by the Court, was based on the law prior to its substantial 1980 revision.

DECIDED JANUARY 30, 1987 —
REHEARING DENIED MARCH 2, 1987 —

*Lee R. Hasty*, for appellants.
*Michael C. Smith*, for appellee.