In the Matter of the
ADOPTION OF RDS.

JS, Appellant (Petitioner),

v.

FV and CV, Appellees (Respondents).

No. C-89-5.

Supreme Court of Wyoming.

Feb. 23, 1990.

Tony S. Lopez of Zimmers and Lopez, Laramie, for appellant.

Yvonne Wade Nagel of Pence and Mac-Millan, Laramie, for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant, the maternal grandmother of RDS, appeals from an order of the district court, dismissing her petition for visitation rights with RDS. Appellees are the adoptive parents of RDS. The district court dismissed Appellant's petition for failure to state a claim upon which relief could be granted.

We affirm.

Appellant raises the following issues:[1]

1. Did the district court abuse its discretion by granting Appellees' motion to dismiss without hearing the matter on its merits?

2. Did the district court err in deciding that the oral agreement between Appellant and Appellees was void?

3. Did the district court err in its interpretation of the grandparents' visitation statute by its refusal to consider what was in the best interest of the child?

1. Appellant's brief was deficient for several reasons: It did not contain a statement of the issues presented for review; it did not contain a proper statement of the case or the facts; and it did not include the mandatory appendices. Because of the brevity of the record and the relative simplicity of the issues presented, we have opted not to dismiss the appeal.

The record and materials filed in support of the petition reveal the following facts.[2] RDS was born to Appellant's daughter on March 9, 1983. According to RDS's mother, RDS's father was unknown. RDS's mother relinquished her parental rights, and, by an order entered on September 13, 1985, RDS became Appellees' adopted child. On June 2, 1989, Appellant petitioned the district court for visitation rights with RDS. In affidavits, Appellant made the following factual assertions: (1) Appellant was RDS's maternal grandmother and had been a primary caretaker of RDS; (2) RDS had resided with Appellant and her husband for substantial periods of time before the adoption occurred; (3) when Appellant's daughter decided to relinquish her parental rights, Appellant actively assisted in choosing the adoptive family; (4) Appellant advised her daughter to allow Appellees' adoption of RDS; (5) Appellees promised Appellant that she would always be able to see RDS; (6) Appellant spent time with RDS during Easter holidays from 1983 through 1987, Thanksgiving holidays from 1983 through 1986, and Christmas holidays from 1983 through 1986; (7) Appellant visited RDS at least once every month from April 1985 until August 1987; and (8) Appellant did not contact Appellees again until September 1988, at which time Appellees informed her that she would not be permitted to visit RDS.

On June 7, 1989, Appellees filed a motion to dismiss the petition for failure to state a claim upon which relief could be granted. The district court determined that Wyoming law does not provide for visitation rights under the circumstances of this case and that the alleged oral agreement between Appellant and Appellees was void under the statute of frauds.[3] The court granted Appellees' motion on August 7, 1989, and Appellant filed this appeal.

We begin our analysis with a recognition that, under the common law,[4] grandparents do not have a right to visit their grandchildren if forbidden by the parents. *Morris v. Pressley*, 494 So.2d 87 (Ala.Civ.App.1986); Annotation, *Grandparents' Visitation Rights*, 90 A.L.R.3d 222, 225 (1979). The Wyoming legislature enacted Wyo.Stat. § 20–2–113(c) (1977) to provide an exception to this common-law rule. *See* Note, *The Constitutional Constraints on Grandparents' Visitation Statutes*, 86 Colum.L.Rev. 118 (1986). Section 20–2–113(c) provides:

> Subsequent to the death or remarriage of one (1) or both parents or after a divorce or judicial separation, the court may, upon petition of a grandparent, grant reasonable visitation rights to the grandparent of the children, if the court finds, after a hearing, that the visitation would be in the best interest of the child.

The reach of § 20–2–113(c) is limited by its unambiguous terms.[5]

---

**2.** We note that Appellant failed to file her petition in accordance with the directives established by this Court in *Nation v. Nation*, 715 P.2d 198 (Wyo.1986). Rather, Appellant filed her petition as a continuation of the adoption proceeding which was initiated on May 8, 1985. Nonetheless, we will examine the merits of Appellant's issues.

**3.** Wyo.Stat. § 1–23–105(a)(i) (1977) provides:
   (a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:
   (i) Every agreement that by its terms is not to be performed within one (1) year from the making thereof[.]

**4.** Wyo.Stat. § 8–1–101 (1977) provides:
   The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable, and all declaratory or remedial acts or statutes made in aid of, or to supply the defects of the common law prior to the fourth year of James the First (excepting the second section of the sixth chapter of forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth and ninth chapter of thirty-seventh Henry Eighth) and which are of a general nature and not local to England, are the rule of decision in this state when not inconsistent with the laws thereof, and are considered as of full force until repealed by legislative authority.

**5.** If the language of a statute is plain and unambiguous and conveys a clear and definite meaning, we will not resort to rules of construction. *Halliburton Company v. McAdams, Roux and Associates, Inc.*, 773 P.2d 153 (Wyo.1989); *Wyoming Insurance Department v. Avemco Insurance Company*, 726 P.2d 507 (Wyo.1986).

Appellant takes issue with the district court's failure to conduct a hearing to determine if visitation was in the best interest of RDS. Under § 20–2–113(c), Appellant has no standing to petition for visitation rights because her request for visitation rights is not premised upon "the death or remarriage of one (1) or both parents or after a divorce or judicial separation." If grandparents are to have visitation rights in Wyoming, it is only after the occurrence of one of these precipitating events. Section 20–2–113(c).

We also conclude that Appellant's petition for visitation rights is further undermined by the fact that RDS was adopted. Upon adoption,

> the former parent, guardian or putative father of the child shall have no right to the control or custody of the child. The adopting persons shall have all of the rights and obligations respecting the child as if they were natural parents.

Wyo.Stat. § 1–22–114(a) (1977). Because a decree of adoption severs the parent-child relationship, *Voss v. Ralston,* 550 P.2d 481 (Wyo.1976), RDS's adoption cut off the mother's and Appellant's visitation rights. *See Heard v. Coleman,* 181 Ga.App. 899, 354 S.E.2d 164 (1987); *In re W.E.G.,* 710 P.2d 410 (Alaska 1985); and *Bikos v. Nobliski,* 88 Mich.App. 157, 276 N.W.2d 541 (1979). The petition was properly dismissed for failure to state a claim upon which relief could be granted.

Finally, we address Appellant's claim that the district court erred in determining that the alleged oral agreement between her and Appellees was void because of the statute of frauds. Although we do not adopt the district court's decision that the statute of frauds is the proper basis for dismissing this petition, we do hold that public policy considerations require dismissal. Where an erroneous standard is applied by the district court, we may still affirm if the decision can be sustained on any legal ground appearing in the record. *Price v. Sorrell,* 784 P.2d 614 (Wyo.1989).

Appellant asserts that she and Appellees entered into an oral contract which permitted her to have visitation rights with RDS in consideration for her encouraging the approval of the adoption. Adoption terminates visitation rights of natural parents and of those claiming rights of visitation through them. *See Crawley v. Gardiner,* 287 N.W.2d 555 (Iowa 1980). Courts have also held that consent for an adoption may not be conditioned upon the grant of visitation rights. *In re W.E.G.,* 710 P.2d at 415–16 n. 10. In the case of *Whetmore v. Fratello,* 197 Or. 396, 252 P.2d 1083 (1953), the Supreme Court of Oregon held that a contract between divorced parents was void as being against public policy where the natural father of a child agreed to the adoption of his child by his former wife and her new husband if he would be permitted " 'at all times, [to] have rights of reasonable and seasonal visitation with said minor child at the home of the [natural father] or wherever else said minor child may be.' " *Id.* at 1083. *See also Stickles v. Reichardt,* 203 Wis. 579, 234 N.W. 728 (1931). In an Iowa case, a decree of adoption contained a provision granting specific visitation rights to the grandparents. The court held in *Crawley* that the "purported legally enforceable *right* of visitation by grandparents," 287 N.W.2d at 556 (emphasis in original), was void for public policy reasons; that inclusion of the provision in the adoption decree was done without jurisdiction; and that the portion of the decree granting visitation rights to the grandparents had no legal effect. *Crawley,* 287 N.W.2d 555. Under similar circumstances as those outlined in the *Crawley* case, the Supreme Court of Arkansas held:

> A decree attempting to grant visitation rights to a natural grandparent as an incident to an adoption or to enforce a grandparent's visitation rights granted before the adoption, without specific statutory authority, is surplusage, void and separable from the remainder of the decree.

*Poe v. Case,* 263 Ark. 488, 565 S.W.2d 612, 614 (1978).

We hold as a matter of public policy that any agreement, whether it was oral or in writing or whether it was included within

the terms of an adoption decree, would not give Appellant a right to visitation with RDS. To the extent the existence of any such agreement permitting her to visit with RDS could be proved, it would be void and unenforceable as violative of public policy.

Affirmed.