William E. GOFF, III, and Mary E. Goff, Appellants (Respondents),

v.

William E. GOFF and Helen Goff, Appellees (Petitioners).

No. 92–3.

Supreme Court of Wyoming.

Jan. 6, 1993.

Kenneth M. Koski, Powell, and Shawn J. McBrien, Bormuth, Freeman & Montgomery, Cody, for appellants.

William L. Simpson, Simpson, Kepler & Edwards, Cody, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

THOMAS, Justice.

The primary issue presented in this case is whether Wyoming's grandparent visitation statute, Wyo.Stat. § 20–7–101 (Supp. 1992), extends to affording rights of visitation to grandparents when the custodial parent is the grandparents' own child. A secondary issue raised by the custodial parent and his wife is whether the trial court abused its discretion in determining the extent of the visitation rights afforded to the grandparents. We hold that the statute extends to situations in which a grandparent is seeking rights of visitation against the natural child of the grandparent, and the trial court did not abuse its discretion in awarding the defined visitation rights to the grandparents. The Order for Grandparents Visitation Rights is affirmed.

Appellants, the custodial parents, present the issues as:

1. Whether the District Court abused its discretion and committed an error of law in finding that the Appellees had a cause of action for grandparent visitation rights pursuant to Wyoming Statutes § 20–2–113(c) and § 20–7–101.

2. If the Supreme Court does find that the Appellees had a cause of action for grandparent visitation pursuant to Wyoming Statutes § 20–2–113(c) and § 20–7–101, did the District Court abuse its discretion because the visitation ordered, substantially impairs the · Appellants' rights, was not in the best interest of the child and the visitation granted was excessive.

The appellees, the grandparents, state the issues in this way:

1. The District Court correctly applied W.S. § 20–7–101 (1977) in holding that Appellees were entitled to reasonable visitation with their granddaughter.

A. The District Court did not commit an error of law in finding that Appellees had valid causes of action under both W.S. § 20–7–101(a)(i) [Wyo.Stat. § 20–2–113(c)] and W.S. § 20–7–101(a)(ii).

B. The District Court did not abuse its · discretion in finding that Appellees were denied reasonable visitation by Appellants.

2. The Appellants have not preserved the question of the constitutionality of § 20–7–101; if the issue is properly before this Court, the Statute is constitutional and does not infringe on any recognized and protected constitutional rights of the Appellants; and the District Court did not abuse its discretion in granting visitation over the objections of

---

* Chief Justice at time of oral argument.

the Appellants nor is the scope of that visitation an abuse of discretion.

The custodial parent and his wife were married in August, 1986, and they currently live in Cody with their three children, the grandchild, who is the subject of this action, and two half-siblings. The grandchild is the child of the custodial parent from a prior marriage. The siblings are the natural children of the custodial parent and his present wife.

The grandparents live in Kingston, Arkansas. In August of 1982, shortly before the custodial parent was divorced from his first wife, he began nursing school in Arkansas. To assist the custodial parent in completing his degree and establishing employment, the grandchild lived with the grandparents in Kingston from December of 1982 until December of 1986. At that time, the custodial parent, who had recently remarried, moved with his wife and the grandchild from Arkansas to Casper.

Since moving to Wyoming, the custodial parent and his wife have allowed the grandparents one extended visit of six weeks with the grandchild in the grandparents' Arkansas home during the summer of 1987. In 1990, the grandchild was adopted by the custodial parent's present wife and, from that point on, they became the custodial parents. Since the visit in 1987, the custodial parents have allowed the grandparents only limited visitation with the grandchild, usually under the custodial parents' supervision. The custodial parents have justified their practice of allowing only supervised visitation by alleging the grandparents' failure to adhere to the custodial parents' disciplinary guidelines. More specifically, they assert the grandparents allowed the grandchild to watch a video the custodial parents considered inappropriate, and the grandparents purchased a jean jacket for the grandchild contrary to the wishes of the custodial parents.

The grandparents filed a Petition to Establish Grandparent Visitation Rights in the district court in Park County. Trial was commenced some three months later and, after a continuance, it was completed about the fourth month after the action was filed. The district court found the custodial parents had denied the grandparents reasonable visitation with the grandchild, and it entered an order outlining a grandparent's visitation schedule. The order provided, in substance, that, during the months of June, July, or August, the grandparents would be allowed a consecutive ten-day period of visitation with their grandchild, in their Arkansas home if that were their choice, without the supervision of the custodial parents; the grandparents would be allowed one weekend of unsupervised visitation with the grandchild every month; and the grandparents would be allowed visitation during the Christmas holiday from December 26 through December 30.

In their primary challenge to the order of the district court, the custodial parents contend Wyoming's grandparent visitation statute, § 20–7–101, does not extend to this situation.[1] The custodial parents contend the statute should be invoked only when the person having custody of the grandchild is not the natural child of the grandparent who is seeking visitation. This argument cannot be supported by reference to the statute. Our rule is that, if the language of a statute is plain and unambiguous and conveys a clear and definite meaning, we do not resort to any rules of statutory construction in applying it. *Matter of Adoption of RDS*, 787 P.2d 968 (Wyo.1990); *Halliburton Company v. McAdams, Roux and Associates, Inc.*, 773 P.2d 153 (Wyo.1989). The language of the grandparent visitation statute, § 20–7–101(a), is plain and unambiguous, and it conveys a clear and definite meaning. The statute states that a grandparent may bring an original action against *any person having custody* of the grandparents' minor grandchild.[2] No restriction upon the identi-

---

**1.** The action in this case did not take place in the context of a divorce, a judicial separation, or a juvenile proceeding, and both parties concede that, even though argued by the custodial par-

ents, Wyo.Stat. § 20–2–113(c) (Supp.1992) clearly does not apply.

**2.** Wyo.Stat. § 20–7–101 (Supp.1992) provides:

ty of the person against whom the grandparent may bring the action can be found in either subpart (i) or (ii) of § 20–7–101(a). Subpart (i) of the statute refers generally to "the person" having custody, and subpart (ii) obviously extends to both parents of the grandchild.

We would decide this case simply by examining the language of the statute, but the case is novel and of substantial import to many people. We note that the statement of purpose in the enacting clause found in 1991 Wyo.Sess.Laws, ch. 119 § 1 is consistent with our reading of the statute since it contains no language that would limit an action for visitation rights by a grandparent whose own child is the custodial parent of a grandchild. The enactment clause reads:

> AN ACT to create W.S. 20–6–701; and to amend W.S. 20–2–113(c) relating to grandparent visitation rights; specifying when grandparents may commence original action to establish visitation rights to a minor grandchild; providing that courts may grant reasonable visitation rights to grandparents if in the best interest of the child; providing procedures; and providing for an effective date.[3]

The only specific proviso to be found in the enactment clause is the mandate that the rights of visitation granted to the grandparent be reasonable and also in the best interests of the child. This phrase demonstrates the primary legislative concern with the advancement of the best interests of the child and does not demonstrate any concern with respect to limiting the grandparent who can be granted visitation rights.

In addressing a contention that the policy justification for establishing visitation rights in grandparents was primarily to afford emotional support when the child is faced with the death of a parent or the dissolution of the family, the Supreme Court of New Jersey noted that the justifications are much broader. That court observed:

> It is [a] biological fact that grandparents are bound to their grandchildren by the unbreakable links of heredity. It is common human experience that the concern and interest grandparents take in the welfare of their grandchildren far exceeds anything explicable in purely biological terms. A very special relationship often arises and continues between grandparents and grandchildren. The tensions and conflicts which commonly mar relations between parents and children are often absent between those very same parents and their grandchildren. Visits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship.

(a) A grandparent may bring an original action against any person having custody of the grandparent's minor grandchild to establish reasonable visitation rights to the child if:

(i) The grandparent's child who is the parent of the minor grandchild has died or has divorced the minor grandchild's other parent and the person having custody of the minor grandchild has refused reasonable visitation rights to the grandparent; or

(ii) An unmarried minor grandchild has resided with the grandparent for a period in excess of six (6) consecutive months before being returned to the custody of the minor grandchild's parents and the parents have refused reasonable visitation rights to the grandparent.

(b) In any action or proceeding under subsection (a) of this section, the court may grant reasonable visitation rights to the grandparent of a child if the court finds, after a hearing, that visitation would be in the best interest of the child and that the rights of the child's parents are not substantially impaired.

(c) No action to establish visitation rights may be brought by a grandparent under subsection (a) of this section if the minor grandchild has been adopted and neither adopting parent is a natural parent of the child.

(d) In any action or proceeding in which visitation rights have been granted to a grandparent under this section, the court may for good cause upon petition of the person having custody or who is the guardian of the child, revoke or amend the visitation rights granted to the grandparent.

3. An explanation for the reference to W.S. 20–6–701 instead of 20–7–101 is found in the Editor's notes in the compiled statutes:

> Although Laws 1991, ch. 119, § 1, enacted this section as § 20–6–701, it was apparently intended to be enacted as § 20–7–101.

Neither the Legislature nor this Court is blind to human truths which grandparents and grandchildren have always known.

*Mimkon v. Ford,* 66 N.J. 426, 332 A.2d 199, 204–05 (1975).

Scholarly study and research has confirmed this position articulated by the New Jersey Supreme Court and has demonstrated that children who miss out on the bonding process with grandparents are deprived of a valuable experience. One author has set forth the significant factors in this way.

Social scientists have identified at least four "symbolic" roles that help explain the ways in which grandparents influence their families. The "being there" role requires nothing more than a grandparent's presence and may help younger generation members in two ways. First, this presence "mitigates against the obtrusive events of the outside world and disruptive events of role transitions * * * [and] serves to maintain the identity of the family." In times of transition, such as after the birth of a sibling or during divorce, a grandparent's presence may exert a calming influence on grandchildren. Second, just by being there, grandparents provide an important stabilizing influence particularly important for children born of early teenage mothers.

The second symbolic role played by grandparents is that of "family watchdog." In this role, the grandparent is alert for signs of abuse or neglect that might indicate that the family will need active care and protection. Third, an "arbitrating" role may be assumed when grandparents actively negotiate between parents and children concerning values and behaviors that may be more central, in the long run, to family continuity and individual enhancement than those that the parents' authority status allow to be expressed. Such negotiation may also occur when grandparents downplay volatile or disruptive differences between parents and children. The fourth important symbolic role for grandparents is as "interpreters" of the family's history. Grandparents may help grandchildren build connections between the family's past, present, and future, which help children form a firmer sense of identity.

Patricia S. Fernandez, *Grandparent Access: A Model Statute,* 6 Yale L. & Pol'y Rev. 109, 109–110 (1988) (footnotes omitted) (citing V. Bengston, Diversity and Symbols in Grandparental Roles, in Grandparenthood 21–24 (V. Bengston & J. Robertson eds.1985)).

The traditional approach that the grandparents' right of visitation was simply derivative of the parents' right and, therefore, became effective only upon the legal absence of the related parent is also addressed by the Fernandez article. *See also* Cheryl Stockman Gan, *Grandparental Visitation Rights in Oklahoma,* 26 Tulsa L.J. 245 (1990). In adopting § 20–7–101, and enacting the amendment of § 20–2–113(c), the Wyoming legislature departed from this traditional view of grandparents' visitation rights, as most other states have done. These statutes include the fact of divorce as a situation triggering the recognition of grandparents' visitation rights. Under the traditional derivative rights theory, divorce could not have given rise to grandparental visitation rights, since the related parent was not legally absent. The shift away from the traditional derivative rights theory demonstrates a recognition of those values that attach to the grandparent/grandchild relationship and leads to a focus on the best interests of the child. In light of this focus upon the best interests of the child, no reason can be discerned to impose artificial limits on which grandparents or grandparent should be afforded standing to petition the court for visitation rights. We will not attach any such limit as gloss upon § 20–7–101.

▮▮▮ Turning to the second argument of the custodial parents, that the district court abused its discretion in determining that the grandparents had been denied reasonable visitation and in outlining the specific visitation schedule, we perceive the substance of the custodial parents' argument is that this visitation schedule substantially impairs their rights as parents

and ignores the best interests of the child. As a general proposition, the award and scheduling of visitation rights is a decision committed to the sound discretion of the trial court, and we do not disturb that trial court's determination unless we can identify a clear abuse of discretion. *C.f. Rowan v. Rowan*, 786 P.2d 886 (Wyo.1990). A court abuses its discretion only when it acts in a manner that exceeds the bounds of reason under the circumstances. *Deen v. Deen*, 774 P.2d 621 (Wyo.1989). The burden is placed upon the party attacking the ruling of the trial court to establish any abuse of discretion, and the ultimate issue is whether the court reasonably could conclude as it did. *Gentry v. State*, 724 P.2d 450 (Wyo.1986); *Noetzelmann v. State*, 721 P.2d 579 (Wyo.1986).

In this instance, the district court reasonably could conclude, based on the testimony in the record, that the grandparents had been denied reasonable rights of visitation. The grandparents testified they had been allowed only one extended visit with their granddaughter since the custodial parents moved to Wyoming, and they also testified that the custodial parents have permitted only supervised visitation. The custodial parents admitted that the grandparents had been favored with only one extended visit with their grandchild since they moved to Wyoming, but they denied the assertion of the grandparents that they had allowed only supervised visits.

The trial judge, the trier of fact in this instance, was in the best situation to assess the credibility of the witnesses and weigh their testimony. Upon review of the grandparents' testimony and the responses of the custodial parents to questions regarding visitation, we conclude that the trial court did not exceed the bounds of reason. There was information from which it reasonably could find that the grandparents had been denied reasonable visitation and, therefore, it did not abuse its discretion in this regard.

■■■ The custodial parents go on to argue that the district court did not maintain the best interests of the child by requiring visitation with the child's grandpar-

ents. Their argument is that the order of the district court "divided and hampered proper parental authority; forced the child into the midst of a conflict of authority and ill feelings between the parents and grandparents; and coerced the parties into what should remain a moral rather than a legal obligation." In this regard, the legislature, when it adopted § 20-7-101, was the body that transformed grandparent visitation from a moral into a legal obligation. The district court did not create this rule of law; it simply exercised the authority that was conferred upon it by that statute.

In determining what visitation schedule would serve the best interests of the child, the district relied upon the expert testimony of a psychologist. The psychologist reported favorable results of his examination of the grandparents. He also testified about the importance of grandparent and grandchild relationships in general, as well as the impact this type of visitation dispute can have upon a child. The district court listened to the testimony of all of the parties to this dispute, including that of the custodial parents that they considered the grandparents fit to care for the grandchild.

Our examination of the record leads to the conclusion that the custodial parents have not successfully assumed their burden of demonstrating how the district court exceeded the bounds of reason when it exercised the discretion afforded it by the statute and ordered visitation. We hold that the district court reasonably could conclude that ordering visitation with the grandparents would promote the best interests of the grandchild and, therefore, it did not abuse its discretion in ordering that visitation.

■■■ The custodial parents also argue that the district court ordered visitation that substantially impaired their rights as parents. This argument is likewise without merit. It is true that the order of the district court impairs the custodial parents' ability to dictate the terms of their child's visitation with the grandparents, but the custodial parents have failed to show how this translates into a substantial impairment of their parental rights. We are not

persuaded by the custodial parents' reference to *Sketo v. Brown,* 559 So.2d 381 (Fla.App.1990), in which that court concluded that the ordered visitation was excessive. The Florida court acknowledged that decisions about whether to award visitation and the extent of the visitation are fact-sensitive determinations. *Sketo.* It follows that no amount of visitation can be perceived as inherently unreasonable or excessive. The propriety of a particular visitation schedule must be considered in light of the facts and circumstances in which the order is made. The custodial parents here have failed to show that, in light of the surrounding facts and circumstances, the visitation ordered in this case should be perceived as unreasonable. No abuse of discretion has been demonstrated with respect to the visitation schedule ordered by the trial court.

The custodial parents did not raise any constitutional objections to the Wyoming grandparent visitation statute at trial. We invoke our usual rule with respect to claims of unconstitutionality and refuse to consider such issues raised for the first time on appeal.

The Order for Grandparents Visitation Rights is affirmed.