**Steven Carlo BASOLO, Appellant (Defendant),**

v.

**Dulcinda Ann BASOLO, Appellee (Plaintiff).**

No. 94–265.

Supreme Court of Wyoming.

Nov. 30, 1995.

Rhonda Sigrist Woodard of Burke, Woodard & Bishop, P.C., Cheyenne, for Appellant.

William L. Miller of Miller and Fasse, P.C., Riverton, for Appellee.

Cheryl Ranck Schwartz of Ranck & Schwartz, Jackson, Guardian Ad Litem.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

TAYLOR, Justice.

A bitter dispute over custody of an only child was exacerbated by geographical separation of the parties' residences. Appellant claims the district court abused its discretion and seeks reversal of orders on visitation and payment of attorney fees. Skillful appellate advocacy, however, cannot gainsay the misbehavior of appellant which virtually compelled the district court's decisions. With the caveat that courts must strive to maintain neutrality, detachment, and the appearance of same, we affirm.

## I. ISSUES

Appellant, Steven Basolo (Basolo), posits the following issues:

I. Did the trial court abuse its discretion in severely restricting Mr. Basolo's visitation with his daughter and denying Mr. Basolo and his daughter the ability to maintain a close father/daughter relationship?

II. Did the trial court err in allowing its ruling regarding visitation to be affected by the gender of the noncustodial parent?

III. Was it error for the trial court to permit the guardian ad litem to report to the court in a manner which made her a witness who utilized hearsay and was not subject to cross-examination?

IV. Did the trial court abuse its discretion in ordering Mr. Basolo to pay a substantial portion of his wife's attorneys fees and 75% of the guardian ad litem fees when there was no evidence presented to indicate he had a greater financial ability to pay?

Appellee, Dulcinda Basolo, a/k/a Dulcinda Gose (Gose), joined each of Basolo's issues, restating them as follows:

I. Did the trial court abuse its discretion in its award of visitation to Mr. Basolo?

II. Did the trial court err in allowing its ruling regarding visitation to be affected by the gender of the noncustodial parent?

III. Was it prejudicial for the trial court to permit the guardian ad litem to report to the court in a narrative manner?

IV. Did the trial court abuse its discretion in ordering Mr. Basolo to pay a portion of his wife's attorneys fees and the guardian ad litem fee?

## II. FACTS

As a teenager, Basolo spent his summers in Wyoming working on his father's ranch near Gillette, Wyoming. In 1968, on such a trip, he met a "cute blonde," who eventually became his wife and adversary.

Following high school graduation, Gose entered into a lengthy relationship/partnership with a film maker in Los Angeles, California. Meanwhile, Basolo tried to stay in touch, usually having to settle for a friendly telephone chat with Gose's mother.[1] Finally, on October 13, 1989, Basolo and Gose were married and Natalie Duval Basolo (Natalie) was born on September 26, 1991. Even prior to their marriage, both recognized that the relationship was "hit and miss," prone to bitter and sometimes violent disputes.

Natalie's advent did little to cool the parties' conflicts. In August of 1992, Basolo filed for divorce in California. Early in October of 1992, Gose induced Basolo to abandon the divorce because dismissal would "be good for Natalie."

The surcease, if any, was short-lived. In October of 1992, Basolo fled to his parents' home in north California and, in early December, Gose and Natalie left southern California and moved in with Gose's parents outside Lander, Wyoming.

Unwelcome at the home of Gose's parents, Basolo later made two strife-torn visits to Lander, entertaining Gose and Natalie in his motel room. During Christmas of 1992, a night-long battle during which the parties literally threw a Bible at each other climaxed when a barefooted Gose, otherwise in a state of dishabille, chased Basolo out into the snow-covered morning, necessitating police intervention.

In April of 1993, Gose informed Basolo that she had filed for divorce in Wyoming and asked him to accept service. Although he knew that Natalie was still nursing, Basolo chose to take the child and leave the jurisdiction rather than accept service of Gose's complaint for divorce.[2]

After leaving Wyoming with Natalie, Basolo's whereabouts became something of an enduring mystery. He says he remained with his parents in California except for two weeks with his sister and friends in Santa Cruz, California. However, on April 26, 1993, Basolo's father wrote Gose's counsel to disclaim his son's presence.

Wherever he was, Basolo slowed down long enough to file another complaint for divorce on April 14, 1993, listing his father's address in California as his place of residence. During that time, Basolo left numerous telephone answering machine messages for Gose, berating her family with vile accusations.

Gose tracked her husband to California where she hired a private detective and an attorney to help her find her daughter. Within a month, a California court ordered custody restored to Gose and declined jurisdiction in favor of the district court for Fremont County, Wyoming, finding:

> That on or about April 12, 1993, the Petitioner/Father to this action, upon learning that a dissolution action was pending in the State of Wyoming, without the consent of Respondent/Mother, wrongfully removed, by abduction, the minor child of this marriage from the State of Wyoming, and then concealed said child from the Respondent/Mother, in direct violation of * * * provisions of the Uniform Child Custody Jurisdiction Act * * *.

1. Just how vituperative he became is exemplified by Basolo's later accusations that Gose's mother (so long his friend and only contact with Gose) was "insane," that she had "tortured" Gose and her older sister, and had, in fact, killed the older sister (who died of cancer in 1991).

2. The complaint was accompanied by a temporary restraining order prohibiting Natalie's removal from the jurisdiction.

Mother and child were reunited on May 17, 1993 and returned to Wyoming where they have since remained.

Following Basolo's peremptory disqualification of the original district court judge, the district court appointed a guardian ad litem for Natalie. The district court ordered limited, supervised visitation, and enjoined *both* parties from "[i]ntentionally communicating with the other party * * * in a coarse or offensive manner, with intent to annoy or alarm the other party."

The record does not clarify why trial was delayed until June of 1994. Basolo, however, substituted counsel at the end of August, 1993 and jettisoned his first psychologist, delaying completion of his psychological evaluation until April of 1994. In the meantime, Basolo found means to circumvent the restraining order by enlisting family members.

In February of 1994, although Natalie was two and one-half years old and incapable of reading, a card addressed to her from Basolo's parents included the following message:

> You look so sad and don't look very happy. Maybe I should come back there and see if you are O.K. since your Mom or Grandparents (Gose) never let us know how you are. I think that is a very immature, selfish and greedy position they are taking, but then they will have to live with themselves. Someday, you will understand * * *.

Two weeks later, Basolo's sister sent a letter directly to Gose, which included the following passage:

> I suppose that when one is the concubine to a media mogul like Michael with whom you lived with for so long, that one looses touch with the real world, and I sincerely hope that you don't impress upon Natalie to live the same lifestyle that you have chosen ... using men for money and whatever else.
>
> Be a woman, for the first time in your life and rise above your stupidity and hatred ... if for nothing else ... for the benefit of Natalie Basolo.

On March 21, 1994, Basolo sent gifts to Natalie with a note which included the following language:

> In the last 10 months your cruel mother has used you as a weapon to hurt me. * * *

* * * * * *

> Someday when you get old enough to learn the truth you will realize how cruel your mother was to you and your daddy as it is very well documented.

Basolo explained the allusion to documentation as indicative of his plan to retain copies of all the foregoing for Natalie's review when she could read.

Given their dysfunctional relationship, it is interesting that each party was able to locate a psychologist willing to vouch for the relative mental stability and parenting skills of their client. Both psychologists, however, endorsed the proposition that "the final determinant is the history of the person's behavior."

Citing the most influential factors, the district court awarded primary custody of Natalie to Gose, affording Basolo an initially restrictive but progressively more expansive visitation schedule. The district court also ordered that Basolo's "file" of materials derogatory to Gose be destroyed, that Basolo pay $411.00 per month as child support, reimburse Gose's trial attorney fees of $7,000.00, and pay seventy-five percent of the guardian ad litem's fee.

After hearing his motion to amend (or, in the alternative, for a new trial), the district court reduced Basolo's child support obligation to $125.06 per month and his responsibility for Gose's trial attorney fees to $4,000.00.

### III. SCOPE AND STANDARD OF REVIEW

 Visitation awards will not be disturbed on appeal absent a clear abuse of discretion. *Goff v. Goff,* 844 P.2d 1087, 1092 (Wyo.1993). Similarly, child support, apportionment of counsel fees, and allocation of costs are all committed to the sound discretion of the district court. *Dowdy v. Dowdy,* 864 P.2d 439, 441 (Wyo.1993); *Marquiss v. Marquiss,* 837 P.2d 25, 46 (Wyo.1992).

"'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria[.]'" *Mintle v. Mintle,* 764 P.2d 255, 257 (Wyo.1988) (*quoting Martin v. State,* 720 P.2d 894, 897 (Wyo. 1986)). Abuse of discretion is not found unless the district court acts in a manner which exceeds the bounds of reason under the circumstances of the case or commits an error of law. *Combs v. Sherry–Combs,* 865 P.2d 50, 55 (Wyo.1993).

Assessment of the circumstances of this case, in the context of alleged abuse of discretion, is tantamount to an evaluation of whether the evidence is sufficient to support the decision of the district court. In review of the evidence, we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party. *Cranston v. Cranston,* 879 P.2d 345, 351 (Wyo. 1994).

## IV. DISCUSSION

### A. VISITATION

Wyo.Stat. § 20–2–113(a) (1994) provides, *inter alia:*

> If the court finds that both parents have shown the ability to act in the best interest of the child, the court may order any arrangement that encourages parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage.

Thereafter, Wyo.Stat. § 20–2–113(q) mandates only that the details of visitation, including costs, be specifically provided for.

Basolo accuses the district court of interfering with his father/daughter relationship as a form of punishment for his removal of Natalie from Wyoming in 1993 and his "intensity in asserting his desire to have contact with Natalie." Clearly, such punitive motives are unacceptable in structuring visitation orders. *Henson v. Henson,* 384 P.2d 721, 723 (Wyo.1963). However, the argument errs in supposing primacy of parental rights over the best interests of the child and ultimately fails due to Basolo's inability to recognize or further his own daughter's best interests.

Courts are, of course, obliged to accept restrictions upon conduct that might be viewed as burdensome by the layman. Wyoming Code of Judicial Conduct, Canon 2, commentary. Peevishness is among those luxuries available to the common man, but unworthy of our courts. Here, the district court succumbed to temptation, manifesting irritation with Basolo in several instances, including the following directive:

> And there's a likelihood, Mr. Basolo, that I could be in this job for another 16 years, and if it comes to my attention during that 16 years that you have violated my order in this regard, I will have the law enforcement agencies of the State of Wyoming hunt you to the ends of this earth and I will personally see to it that you are prosecuted for criminal contempt of Court on a felony basis in front of a jury so that you can be sentenced to the penitentiary of the State of Wyoming if you violate my order. Do you understand that, Mr. Basolo?

The district court later tempered its remarks, noting that the reference to criminal contempt was extreme, but was occasioned by the irrational and irresponsible behavior of Basolo during the course of the proceedings.

The apparent anger of the district court obliges our inquiry as to whether, in the context of restrictive visitation provisions, it bespeaks of

> such a condition of the mind which sways judgment and renders the judge unable to exercise his functions impartially in a given case or which is inconsistent with a state of mind fully open to the conviction which evidence might produce.

*Cline v. Sawyer,* 600 P.2d 725, 729 (Wyo. 1979). Of course, the mere fact of restricted visitation does not necessarily indicate motive to punish or bias. *Brown v. Avery,* 850 P.2d 612, 616 (Wyo.1993). Rather, our threshold inquiry remains whether the evidence presented fairly supports the decision of the district court.

■■■■ Basolo has a fundamental, constitutional right to associate with his daughter. *Hall v. Hall,* 708 P.2d 416, 421 (Wyo.1985). In the wreckage of any marriage, though, vindication of parental rights shall not be lavished at the expense of the "paramount purpose" of serving the welfare and best interests of the child. *Laughton v. Laughton,* 71 Wyo. 506, 529, 259 P.2d 1093, 1103 (1953). Recognition that parental rights are fundamental does not alter the cardinal rule that when the rights of a parent and the rights of a child collide, it is the rights of the parent which must yield. *Matter of MLM,* 682 P.2d 982, 990 (Wyo.1984); *Stirrett v. Stirrett,* 35 Wyo. 206, 222, 248 P. 1, 5 (1926).

■■■■ Basolo does not contest the award of custody to Gose. Having awarded custody, the district court had a legitimate concern for stability:

An order awarding custody to one parent fixes that parent as the primary nurturer of the child and the one with whom the child shall reside. Once such an order is entered, considerations of stability in child placement become of central importance.

*Gurney v. Gurney,* 899 P.2d 52, 54 (Wyo. 1995). Recognizing the paramount import of stability to Natalie, the district court listed those factors affecting her best interests, including: character of the parties; residence, employment and stability of the parties; potential for flight; likelihood of non-present party being maligned; and ability to obey court orders. The foregoing criteria provide an objective basis for determining the fairness and propriety of the visitation order in terms of evidentiary support:

1. Character of the Parties:
 a. Except for her participation in extended mutual combat with Basolo, the record shows Gose to be a fit parent.
 b. While briefly in the state for court proceedings, Basolo took time to obtain a fishing license by falsely swearing to Wyoming residency.[3] In direct contravention of Wyo.Stat. § 31–7–106(c) (1994), Basolo possesses both California and Wyoming driver's licenses. His second divorce complaint claims residence

with his parents, although he was asked to leave the family home and is allegedly unwelcome there. He defrayed some of his personal legal expenses by appropriating approximately $2,500.00 committed to his safekeeping as a memorial fund for a deceased colleague.

Gose's sister, Adele, died of cancer in 1991. While holding Natalie in California, Basolo left messages calling the Gose family "sickies" who "killed" Adele. Later, while assaulting Gose's father, Basolo repeated his accusations concerning Adele's death.

2. Residence, Employment and Stability:
 a. Since returning to Wyoming in December of 1992, Gose has lived with her parents in the home they own outside Lander. She has been employed part-time at a Lander print shop since February of 1993. Her home was portrayed as stable and nurturing.
 b. Basolo claims to live part-time with a girlfriend and part-time with his parents, although his father writes that he is unwelcome at the family home. The vagaries associated with sending a four-year-old child on a thousand mile journey for visitation are only aggravated by an extremely unsettled environment at the end of the line.

When the parties separated, Basolo took extended sales trips "literally to the Canadian border." During the second half of 1993 and the beginning of 1994, he engaged in no gainful employment. In April of 1994, he became self-employed, providing massages for people in their homes or offices.

3. Potential for Flight:
 a. Gose has remained in Lander since December of 1992 and has worked continuously for one employer since February of 1993.
 b. Upon learning of Gose's divorce complaint, Basolo "wrongfully abducted" Natalie. With no permanent residence and sporadic employment, few forces are apparent which would likely preclude another such frolic.

---

**3.** Basolo minimized this as a sin of omission: "I signed it and did not read the fine print."

4. Derogation of Absent Parent:

 a. Basolo's propensity to malign Gose and her family inspire trepidation. Accusatory phone messages and assaultive behavior resonate with elements of the crime of stalking. *See* Wyo.Stat. § 6–2–506 (Cum.Supp.1995). Great discomfiture is caused by Basolo's intent to save records of vituperative communications for indoctrination of Natalie against her mother. Although the district court ordered Basolo to destroy his "hate" file, he viewed such activity as acceptable enough to boast of it during the trial proceedings.

5. Compliance with Court Orders:

 a. Rather than utilizing "self-help," Gose submitted herself to the jurisdiction of a California court in her efforts to regain custody of Natalie.

 b. Beginning with his removal of Natalie from Wyoming, Basolo has repeatedly demonstrated a knack for hiding substantive non-compliance with process under the sheep's clothing of apparent technical compliance. He made an end run around the district court's restraining orders by disguising hate-filled messages to Gose as letters to the child, who is not yet literate, and enlisting his family to do the same. His assault and battery upon Gose's father in the presence of the child belie his claim that he has never violated an order involving the child. That such insolence remains unabated is well documented by his post-decree letter to the clerk of court, asserting the decree to be part of the district court's "sinister plan[.]"

■ The evidence reveals Basolo as less than honest, forthright or forgiving. His protestations of love for Natalie are unavailing in the face of his hate-filled dealings with Natalie's mother and her family. Abuse of discretion occurs " 'when a material factor deserving significant weight is ignored,' " but all such factors bearing upon Natalie's visitation augur against Basolo. *Little v. Kobos By and Through Kobos,* 877 P.2d 752, 754–55 (Wyo.1994) (*quoting Vanasse v. Ramsay,* 847 P.2d 993, 996 (Wyo.1993)).

■ Commission of visitation arrangements to the sound discretion of the district courts evinces the shared belief of the legislature and this court that there is no one preferred schedule given the great variety of fact patterns which present themselves. The hardship of a visitation schedule on one parent will not, without more, be viewed as an abuse of discretion, particularly where the parties are separated by great geographical distances. *Rowan v. Rowan,* 786 P.2d 886, 890–91 (Wyo.1990). In this case, an initially restrictive visitation schedule becomes increasingly liberal, affording California visitation within two and one-half years. At best, Basolo presented a checkered image to the district court, and we cannot discern any abuse of that court's discretion in its provisions for visitation.

**B. GENDER PREFERENCE**

In announcing its decision, the district court found that Basolo "acted irrationally, immaturely, impulsively, and * * * caused a lot of people some serious concerns * * * poisoning [his] child's mind about her mother and the grandparents on her mother's side[.]" In granting visitation, the district court noted personal experiences suggesting it would be detrimental to Natalie to be gone from her mother for six months at a time. Without contesting the custody award, Basolo attacks the district court's comments as indicative of a gender bias which renders the visitation order an abuse of discretion.

■ Wyo.Stat. § 20–2–113(a) provides "no award of custody shall be made solely on the basis of gender of the parent." *See Fanning v. Fanning,* 717 P.2d 346, 348–49 (Wyo.1986). Invocation of the "tender years doctrine" of maternal preference in custody awards is a mistake of law, requiring reversal. Here, however, the argument is attenuated as we are asked only to consider the district court's comments as indicative only of unlawful bias as to *visitation.*

Acquiescence in the custody determination reduces Basolo's gender bias argument from a question of law to one of "sufficiency of the evidence." Having found overwhelming evidence in support of the visitation order, we hold the district court's gender preference

comments to be regrettable but harmless error.

### C. PARTICIPATION OF GUARDIAN AD LITEM

 Vague accusations of wrongdoing on the part of Natalie's guardian ad litem quickly degenerate into a recitation of that evidence to which Basolo feels the guardian ad litem should have been more attentive. Such efforts to reargue the facts discount our deference to the finder of fact, even in the more extreme circumstance of termination of parental rights. *In Interest of JLG,* 762 P.2d 42, 43 (Wyo.1988).

 A guardian ad litem is appointed to act *in the interest* of a minor. *Dye by Dye v. Fremont County School Dist. No. 24,* 820 P.2d 982, 985 (Wyo.1991). In soliciting the input of the guardian ad litem, the district court followed the procedure we have commended:

> [B]y accepting the presentation and argument of the guardian ad litem favorable to one side or the other as the guardian ad litem believes is in the best interest of the child.

*Matter of Parental Rights of PP,* 648 P.2d 512, 517 (Wyo.1982). While such presentations preferably occur in open court, where both sides may participate, the filing of a written report is also acceptable. *Matter of Parental Rights to ARW,* 716 P.2d 353, 357 (Wyo.1986).

The guardian ad litem reported that Basolo came into town like a ton of bricks, offering to cater meals and provide massages for the guardian ad litem and her office staff. After assuring the guardian ad litem that he would leave town so as to avoid contact with Gose (which the district court had enjoined), Basolo assaulted Gose's father. Whatever impression he was trying to make, Basolo left the guardian ad litem feeling "uncomfortable with him being near me and my family."

Essentially, Basolo's problem with the guardian ad litem is that he made no better impression upon her than he did upon the district court. Even those who criticize the best interests of the child standard as indeterminate recognize the value of the guardian ad litem's *subjective* impressions to a court's decisions concerning custody and visitation. Katherine Hunt Federle, *Looking for Rights in All the Wrong Places: Resolving Custody Disputes in Divorce Proceedings,* 15 Cardozo L.Rev. 1523, 1554–56 (1994).

 Basolo's speculation concerning ex parte communications between the guardian ad litem and the district court is unavailing in the absence of any record of same, let alone any indication of prejudice. *Moore v. Moore,* 809 P.2d 261, 264 (Wyo.1991). Although he acknowledges the need to demonstrate plain error with respect to the guardian ad litem, Basolo's charges of hearsay and denial of cross-examination are unsupported by specific record references, violation of a clear and unequivocal rule of law, or demonstration of material prejudice to his case. *Matter of Parental Rights of PP,* 648 P.2d at 518. As such, none of his attacks upon the work of the guardian ad litem afford a basis upon which to reverse the decision of the district court.

### D. ATTORNEY AND GUARDIAN AD LITEM FEES

 The district court ordered Basolo to pay $4,000.00 of Gose's legal fees and seventy-five percent of the fees for the guardian ad litem. Basolo argues that these orders evince a punitive intent. He argues that his earning power is not that much more than Gose's, making the district court's orders for payment of fees an abuse of discretion.

The parties stipulated that their differences engendered legal fees in the amount of $7,000.00 each. Basolo accepts the district court's finding that his current net earnings of $500.00 per month belie the fact that he "is capable of earning a net income of considerably more than he has in the past." Without record support, he asserts that his seventy-five percent share of the bill of the guardian ad litem amounts to $2,548.00.

Neither party endeavors to ascertain the exact cost to Gose occasioned by Basolo's wrongful abduction of Natalie. Furthermore, it is not unreasonable to suppose that the atmosphere created by that abduction led directly to the district court's appointment of

a guardian ad litem, to which Basolo failed to interpose any objection.

As an appellate court, we consider that our power to disturb a property settlement fixed by a trial judge is limited indeed. There must be a clear abuse of discretion before we will upset or adjust such a settlement. We consider "abuse of discretion," to be such an abuse as shocks the conscience of the court. It must appear so unfair and inequitable that reasonable persons could not abide it.

*Paul v. Paul,* 616 P.2d 707, 714 (Wyo.1980). Citing the foregoing case, we have held that payment of attorneys' fees is a part of the property division and, thus, within the sound discretion of the trial court. *Bereman v. Bereman,* 645 P.2d 1155, 1162 (Wyo.1982).

That Basolo views the district court's imposition of payment responsibility as burdensome can hardly be called shocking news. He has, however, made no showing which would approach the sort of abuse of discretion necessary for us to step in and micro-manage the apportionment of fees.

## V. CONCLUSION

We affirm the amended decree in all respects.