PITTMAN, Judge,
dissenting.
I dissent. The main opinion represents a complete departure from the analytical framework I espoused in the main opinion in Dodd v. Burleson, 932 So.2d 912 (Ala.Civ.App.2005), appeal after remand, 967 So.2d 715 (Ala.Civ.App.2007). As I made *631 clear in Dodd, Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), does not stand for the proposition that states must adopt a harm standard in order for their grandparent-visitation statutes to conform with due-process guaranties afforded by the Fourteenth Amendment. Since Troxel was decided, courts in a number of states have determined — consistent with the main opinion in Dodd— that harm to a child is not a constitutionally required prerequisite for a grandparent-visitation award contrary to the wishes of fit parents. In re Adoption of C.A., 137 P.3d 318, 326-27 (Colo.2006); Vibbert v. Vibbert, 144 S.W.3d 292, 294-95 (Ky.Ct.App.2004); Rideout v. Riendeau, 761 A.2d 291, 300-01 (Me.2000); Harrold v. Collier, 107 Ohio St.3d 44, 52, 836 N.E.2d 1165, 1172 (2005) (“nothing in Troxel suggests that a parent’s wishes should be placed before a child’s best interest”); and Hiller v. Fausey, 588 Pa. 342, 363-66, 904 A.2d 875, 888-90 (2006).
Further, I dispute the proposition that each of the authorities cited in the main opinion holds that the Due Process Clause of the Fourteenth Amendment[3] requires the imposition of a harm standard. For example:
1. The holding of Cranney v. Coronada, 920 So.2d 132 (Fla.Dist.Ct.App.2006), is predicated upon that state’s constitutional right to privacy, not the federal Due Process Clause;
2. The holding of In re Marriage of Howard, 661 N.W.2d 183 (Iowa 2003), is based upon provisions in Iowa’s state constitution (id. at 187 n. 4); and
3. Koshko v. Haining, 398 Md. 404, 921 A.2d 171 (Md.2007), is predicated upon Maryland’s state constitution {id. at 443-44 n. 22, 921 A.2d at 194 n. 22).
When a court such as this one is confronted with a constitutional challenge to a statute such as Ala.Code 1975, § 30-3-4.1, that is duly enacted by the Alabama Legislature, the elected lawmaking representative body of the people of this state, “ ‘it is the recognized duty of the court to sustain the act unless it is clear beyond, reasonable doubt that it is violative of the fundamental law.’ ” Ex parte D.W., 835 So.2d 186, 190 (Ala.2002) (quoting Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944); emphasis added in D.W.). The main opinion reflects no recognition of, much less adherence to, that fundamental principle of review. Rather, under the guise of adhering to § 30-3-4.1(d)(6), it subjugates the entire thrust of § 30-3-4.1 to a threshold harm standard that the Legislature has had the opportunity to consider since Troxel was decided but has declined to include in the statute. That, in a nutshell, is what is truly wrong with the main opinion.
The Legislature, over the past 30 years, has seen fit to enact statutes providing for, and then further expanding, the power of trial courts to hear actions filed by grandparents seeking awards of visitation rights. Even now, it is continuing to do so: House Bill 32, which passed the House of Representatives by a 99-0 vote and is pending its third reading in the Senate, would allow a grandparent to seek visitation rights with grandchildren even when that child’s parent has voluntarily relinquished custody of, or has financially abandoned, the child. In my view, the Legislature’s decisions in this field are justifiable not only by the role of the state as parens patriae of Alabama’s minor children, but also by *632 the fact that grandparents serve a number of functions in many extended families, not all of which are perfectly congruent with parental interests:
‘“Social scientists have identified at least four “symbolic” roles that help explain the ways in which grandparents influence their families. The “being there” role requires nothing more than a grandparent’s presence and may help younger generation members in two ways. First, this presence “mitigates against the obtrusive events of the outside world and disruptive events of role transitions ... [and] serves to maintain the identity of the family.” In times of transition, such as after the birth of a sibling or during divorce, a grandparent’s presence may exert a calming influence on grandchildren. Second, just by being there, grandparents provide an important stabilizing influence particularly important for children born of early teenage mothers.
“ ‘The second symbolic role played by grandparents is that of “family watchdog.” In this role, the grandparent is alert for signs of abuse or neglect that might indicate that the family will need active care and protection. Third, an “arbitrating” role may be assumed when grandparents actively negotiate between parents and children concerning values and behaviors that may be more central, in the long run, to family continuity and individual enhancement than those that the parents’ authority status allow to be expressed. Such negotiation may also occur when grandparents downplay volatile or disruptive differences between parents and children. The fourth important symbolic role for grandparents is as “interpreters” of the family’s history. Grandparents may help grandchildren build connections between the family’s past, present, and future, which help children form a firmer sense of identity.’ ”
Goff v. Goff 844 P.2d 1087, 1091 (Wyo.1993) (quoting Patricia S. Fernandez, Grandparent Access: A Model Statute, 6 Yale L. & Pol’y Rev. 109, 109-10 (1988)). For the main opinion now to state, in direct contradiction of the main opinion in L.B.S. v. L.M.S., 826 So.2d 178, 184 (Ala.Civ.App.2002), that the state has no compelling interest in promoting normal relationships between grandparents and their progeny, but can only intercede based on a showing of “harm,” is nothing short of an insult to the efforts of all Alabama grandparents.
The main opinion further posits that the trial court’s judgment is due to be reversed on the ground that no showing of harm was made in this case. Again, I must disagree. The trial court, in its judgment, exhaustively detailed the testimony of the parties and the other adult witnesses that had been given before the children testified, and it made findings of fact and conclusions of law based upon that testimony and the documentary evidence. Perhaps the most pertinent factual finding made by the trial court is the following:
“The extreme control that is currently exercised by [the parents, by] restricting access of the grandparents to [the] children and, which is meant to be directed toward [the grandparents], has had the effect of:
“a. Completely alienating the ... children from their ... grandparents, with whom they had previously established strong relationships.
“b. Severely restricting the ... children from their established relationships with their extended paternal family which includes many aunts, uncles, cousins as well as them own godmothers.
*633 “c. Severely restricting the ... children from relationships with friends, which friendships were nurtured as a part of their relationship with [the] grandparents.
“d. ... [Contributing [to], along with the ever more bizarre efforts of [the grandparents] to overcome the restrictions, ... destroying the relationship between the parent[s] ... and [the] grandparent[s].”
Further, the trial court expressly determined that all the enumerated factors set forth in § 30-3-4.1(d), with the sole exception of parental wishes, weighed in favor of granting visitation rights to the grandparents; that the parental preference for no visitation was grounded in “matters of willfulness, control, financial leverage and resentment engendered by a prolonged period of financial leverage enjoyed by [the grandparents]” that did not touch “directly on the well being of the ... children”; and that the parents appeared to be willing even to commit perjury in an effort to maintain their control, a situation that the trial court deemed intolerable:
“In the long term such [exertion of control] is not in the best interests of the ... children. Rather than live in circumstances where the ... children love their parents and grandparents and authority is muddled between the two sets of adults, which is not in the best interests of the children, the ... children could well find themselves alienated from [the] grandparents and without their adult advice, and resentful toward their parents for exerting too much control over their upbringing so that at the earliest opportunity they will break loose from parental control [and] rebel against parental control and this too is not in the long term best interests of the ... children. The ... children would move from a condition of having too many adults in their lives to respect, to a condition where they would have no adults in their lives to respect. Either extreme is not in the best interests of the ... children.
“The solution devised by the ... parents to the perceived dangers of having too much family around with the remedy of near total isolation of the children from the ... grandparents is over[-]compensation for the perceived danger.”
After having reviewed of the record, I believe that the trial court properly gave due deference to the wishes of the parents and deemed them as 'prima facie in the best interests of the children; however, the trial court’s decision that an award of visitation was warranted in spite of those wishes was permissible upon a consideration of all the remaining factors set forth in § 30-3-4.1(d) as well as the recommendation of the guardian ad litem favoring visitation. Thus, I believe that the trial court’s judgment that visitation should be granted to the grandparents is supported by the law and the evidence.
In accordance with the foregoing views I have expressed, and because I believe that none of the other grounds asserted for reversal in the parents’ brief are well taken, I am of the opinion that this court is committing a grievous error in reversing the judgment under review. I dissent, and I urge the Alabama Supreme Court, if that court is given the opportunity, to grant certiorari review and reverse this court’s judgment.

. The parents did not assert in the trial court any conflict between Ala.Code 1975, § 30-3-4.1, and the Alabama Constitution of 1901.